# CHARLESTON.

RITCHIE COUNTY BANK v. THE FIREMAN'S INSURANCE CO.                    | 55   261|
                                                                      | 55   372|

Submitted September 3, 1903—Decided March 15, 1904.

1. INSURANCE POLICY—*Action*.

   The defendant insurance company, in consideration of $75.00 premium, by its agent, C., issued and delivered its policy to S. D. W. for $2,500.00 as follows: $1,500.00 thereof on a building used for a hotel, office and other purposes, then owned by S. D. W. and $1,000.00, the residue, on hotel, office and kitchen furniture, loss, if any, under the first item of the policy, payable to B. as its interest might appear at the time of fire. The property was totally destroyed by fire. *Held*, That B. can maintain its action in its own name upon said policy against the company for said $1,500.00. (p. 266).

2. INSURANCE POLICY—*Forfeiture*.

   Where an insurance policy stipulates that the entire policy, unless otherwise provided by agreement, endorsed thereon, or added thereto, shall be void, if any change, other than by the death of the insured, shall take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process, judgment, or voluntary act of the insured, or otherwise, and the insured. after the policy is issued and delivered to him by the company, without any agreement, or consent of the company endorsed on said policy, or added thereto, and without the consent of the company in any other way obtained by him, voluntarily conveys by deed, the insured property to another, such conveyance and change of title of the insured property, forfeits the policy, with the right to recover thereon for loss or damage to the property. (p. 271).

3. INSURANCE—*Agent—Waiver*.

   S. D. W., after he had received the policy sued on, conveyed the insured property by deed to E. D. W., and E. D. W., after such conveyance to him, made and delivered his notes, payable to C. (who, as the agent of the company, issued the policy to S. D. W.,) in payment of the premium expressed in the policy, and afterwards E. D. W. paid the said notes to C., but without the knowledge, consent or ratification of the company. *Held*, That the acts of C., in receiving said notes and collecting the same in payment of the said premium, did not constitute a waiver by the company of the forfeiture of said policy as aforesaid. (p. 273).

4.   INSURANC POLICY.

Chapter 33 of the Acts of the Legislature of 1899, renders
fire insurance companies, doing business in this State, liable
in case of total loss by fire or otherwise, as stated in the pol-
icy, on any real estate insured by them for the whole amount
of insurance stated in the policy of insurance, upon said real
estate.   (p. 276).

Error to Circuit Court, Ritchie County.

Action by the Ritchie County Bank against the Fireman's
Insurance Company. Judgment for defendant, and plaintiff
brings error.

*Affirmed.*

SHERMAN ROBINSON and J. NEWMAN, for plaintiff in error.

YOUNG & McWHORTER, for defendant in error.

MILLER, JUDGE:

In an action of *assumpsit* brought by the Ritchie County
Bank against the Fireman's Insurance Company of Baltimore,
Maryland, the circuit court of said county, on the 26th day of
February, 1903, rendered a judgment against the plaintiff,
dismissing its action, and awarding costs to the defendant.   To
this judgment, the plaintiff Bank, obtained a writ of error and
*supersedeas.*  Various rulings of the court, made during the
progress of the action, are assigned by petitioner as grounds of
error.   All of the evidence adduced on the trial is certified in
bills of exception.

Plaintiff's declaration is in the form described by section 61
of chapter 125 of the Code.   It alleges that the defendant, by
virtue of the policy of insurance thereto attached and therewith
filed, owes to the plaintiff the sum of one thousand and five
hundred dollars for loss in respect to the property insured by
said policy, caused by fire on or about the 21st day of December,
1901, at the town of Cairo, in the said county of Ritchie.   The
policy sued on is in form, the "Standard Fire Insurance Pol-
icy;" bears date on the 8th day of March, 1901; is numbered
709506; and, among its many provisions, contains the following:

"In consideration of the stipulations herein named and Sev-
enty-five and 00-100 Dollars Premium, Does Insure S. D. Wil-
liams for the term of one year from the 9th day of March, 1901,

at noon, to the 9th day of March, 1902, at noon, against all direct
loss or damage by fire except as hereinafter provided.  To an
amount not exceeding Twenty-five Hundred Dollars, to the fol-
lowing described property while located and contained as de-
scribed herein, and not elsewhere, to-wit:  Mr. S. D. Williams,
$2,500.00 as follows:  $1,500.00 on the three-story metal roofed
building, situate on the north side of Railroad Street, Cairo,
Ritchie County, W. Va., and occupied for hotel, office and mer-
cantile purpose, and $1,000.00 on hotel, office and kitchen furni-
ture of every *description,* including billiard tables, pool tables,
balls, cues, and all appurtenances thereto, all while contained
therein. Loss, if any, under first item of the within policy, pay-
able to the Ritchie County Bank as its interest may appear at the
time of fire.  Other insurance permitted. * * * * This entire
policy, unless otherwise provided by agreement indorsed hereon
or added hereto, shall be void * * * if the hazard be in-
creased by any means within the control or knowledge of in-
sured: * * * or if any change, other than by the death of
the insured, take place in the *interest,* title, or possession of the
subject of insurance (except change of occupants without in-
crease or hazard) whether by legal process of *judgment* or volun-
tary act of the insured, or otherwise. * * * * In any
matter relating to this policy no person, unless *duly* authorized
in writing, shall be deemed the agent of this company. * * *
* * If with the consent of this company, an *interest* under this
policy shall exist in favor of a *mortgagee* or of any person,
or corporation having an *interest* in the subject of the insurance,
other than the interest of the insured as described herein, the
conditions hereinbefore contained shall apply in the manner
expressed in such provisions and conditions of insurance relating
to such *interest* as shall be written upon, attached, or appended
thereto. * * * * * If fire occur the insured shall give im-
mediate notice of any loss thereby in writing to this company,
protect the property from further damage, forthwith separate
the damaged and undamaged personal property, put it in the
best possible order, make a complete inventory of the same,
stating the quantity and cost of each article and amount claimed
thereon : within sixty days after the fire, unless such time is ex-
tended in writing by this company, shall render a statement to
this company. signed and sworn to by the insured, stating the

knowledge and belief of the insured as to the time and origin of the fire; the *interest* of the insured and all others in the property; the cash value of each item thereof and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of the said property; and a copy of all the descriptions and schedules in all policies; any change in the title, use, occupation, location, possession, or exposure of said property since the issuing of this policy; by whom and for what purpose any building herein described and the several parts thereof were occupied at time of fire; and shall furnish, if required, verified plans and specifications of any building, fixtures, or machinery destroyed or damaged; and shall also, if required, furnish a certificate of the magistrate or notary public (not *interested* in the claim as a creditor or otherwise, not related to the insured) living nearest to the place of fire, *stating* that he has examined the circumstances and believes the insured has honestly estimated the loss to the amount that such magistrate or notary public shall certify.  *  *  *  *  * This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions, as may be endorsed hereon or added hereto, and no officer, agent. or other representative of this company shall have power to waive any provisions or conditions of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

Attached to the printed form of the policy, is the following: "Note:—To secure Mortgages, if desired, the Policy should be made payable on its face to such Mortgagee, as follows: Loss, if any, payable to————as his interest may appear." And, the consent by company to assignment of interest." "The Fireman's Insurance Company of Baltimore, hereby consents that the interest of ————— as owner of the property covered by this policy be assigned to————, ————, agent."

The defendant interposed a demurrer to the declaration, which

was overruled by the court. Defendant contends that the policy sued on is indivisible, and being so, its said demurrer should have been sustained. The policy expressly provides that loss, if any, under the first item (the $1,500.00 item) of the policy shall be payable to the Ritchie County Bank as its interest may appear at the time of fire. The declaration avers that the defendant owes to the plaintiff the sum of $1,500.00, for loss in respect to the property insured by said policy. Under section 62 of said chapter, if good cause therefor be shown or appear, the court or judge in vacation, may order the plaintiff to file a more particular statement, in any respect, of the nature of his claim, or the facts expected to be proved at the trial. By this section, the defendant may obtain the facts which may be necessary for his defense, when they are not fully disclosed by the declaration. Kerr on Ins, p. 764, says: "The determination of the proper parties to an action upon an insurance policy must be largely governed by the law and practice of the forum regulating suits upon ordinary contracts. The policy itself designates the party to whom the proceeds are primarily payable, and a suit upon a policy must, as a general rule, except where otherwise provided by statute, be brought by the one designated in the contract as the payee, or his privies. * * * * * The mortgagee may sue alone, and in his own name, where the loss, if any, is payable to him as his interest may appear, when his interest equals or exceeds the full amount due under the policy." 3 Joyce on Ins., section 2305, among other things, states: "In addition to the class of assignments which we have mentioned in the preceding section, there is another species, which is similar to that of the assignment of a chose in action. We refer to those cases where the policy is issued to one person; loss, if any, payable to another, or, in case of loss pay the amount to————. An insurance policy making loss payable to another than the assured must be regarded as having been at its inception assigned to such other person with the consent of the company, and it is not necessary for him to obtain a transfer of the policy from the assured, assented to by the company, as in ordinary cases,. A provision that a loss shall be payable to a mortgagee or his assign as his interest may appear, operates only as a conditional appointment to pay so much of the proceeds of the policy as may be equal to the amount of the mortgage at the time of a loss under the

policy." Many cases are cited by the author to sustain the principle above stated. *Colby* v. *Parkersburg Ins. Co.,* 37 W. Va. 789, holds that where a policy of fire insurance insures A. in a given sum, part of it on one property, part on another, loss payable to B. mortgagee, as his interest may appear, and B.'s mortgage covers only one of the properties insured, B. may sue on the policy in his own name and recover the total loss on both properties not exceeding his debt, notwithstanding his mortgage covers only one of the properties insured. In *Brown* v. *Ins. Co.* 5 R. I. 394, it is held, that a policy of fire insurance effected by the owner and mortgagor of a stock of goods, by the terms of which the loss or damage, if any, is made payable to the mortgagee, is, in legal effect, assigned by the former to the latter, with the consent of the insurer, as collateral security for the mortgage debt. A policy of insurance made payable to a third person as beneficiary, as his interest may appear at the time of fire or loss, does not, according to this view, insure such third party, or his interest in the subject of insurance. Therefore, his right to sue and recover on the policy depends upon his interest in the insurance money at the time of the loss, or more accurately speaking, at the time of the institution of his action. The court, therefore, did not err in overruling the said demurrer.

The defendant also filed its plea of *res judicata,* and with said plea and in support thereof, vouched the record of a certain action of *assumpsit,* instituted in the circuit court of Ritchie County, on the 21st day of April, 1902, by S. D. Williams against said Fireman's Insurance Company for $1,000.00 damages. The declaration in the last mentioned action was filed at the May Rules, 1902, and alleges that the defendant, by virtue of the policy of insurance thereto attached and therewith filed, owes to the plaintiff the sum of one thousand dollars for loss in respect to the property insured by said policy, caused by fire, on or about the 21st day of December, 1901, at the town of Cairo, in the said county of Ritchie. Said last named policy is also numbered 709506, bears date on the 8th day of March, 1901, and, among other things, recites and states that, "In consideration of the stipulations herein named and of Seventy-five and 00.100 Dollars *Premium,* Does Insure S. D. Williams for the term of one year from the 9th day of March, 1901, at noon, to the 9th day of March, 1902, at noon, against all direct loss

or damage by fire except as hereinafter provided, To an amount not exceeding Twenty-five Hundred Dollars, to the following described property while located and contained as described herein, and not elsewhere to-wit: Mr. S. D. Williams, $2,500.00 as follows: $1,500.00 on the three-story frame metal roofed building, situate on the north side of Railroad Street, Cairo, Ritchie County, West Virginia, and occupied for hotel, office and mercantile purposes, and $1,000.00 on hotel, office and kitchen furniture of every description, including billiard tables, pool tables, balls, cues, and all appurtenances thereto, all while contained therein. Loss, if any, under first item of the within policy, payable to the Ritchie County Bank as its interest may appear at time of fire. Other insurance permitted." Pleas were filed therein by the defendant, and issues made upon the demand of said Williams for said $1,000.00. A trial of this action was had, in which no matter was put in issue except the right of Williams to recover said $1,000.00, as mentioned in the second item of said policy. On the 5th day of January, 1903, after the plaintiff had introduced his evidence in chief in support of his claim, the defendant demurred to said evidence; whereupon the court sustained the demurrer, dismissed the action, and gave judgment in favor of the defendant against plaintiff, Williams, for costs, which judgment is in full force and effect; and was asserted in the circuit court and is urged here, as a full and complete defense to the action before us for review. To the plea of *res judicata,* the plaintiff filed its demurrer which was overruled, and issue was then joined upon said plea.

While it is true that the said policy No. 709506 was attached to the declaration in the Williams case, no averment was made in the pleadings in that case or issue joined therein as to said $1,500.00 item. Neither was any evidence offered or heard on the trial in that action in relation thereto.

There are two separate and distinct items in the policy, for which separate actions may be prosecuted, upon appropriate pleadings and proofs.

The principle of *res judicata* has been so often passed upon by this Court, that almost every conceivable question arising thereunder has been settled. In the recent case of *Waldron* v. *Harvey,* decided at the present term, this Court holds that where

there is no pleading to warrant a decree, or part of a decree, the decree, or such part of it, is not merely voidable, but void, as it is not a matter in issue. BRANNON, JUDGE, speaking for the Court, says a decree is a conclusion of law from pleading and proofs, and where there is a failure of either pleading or proofs there can be no decree. A decree or any matter of a decree, which has no matter in the pleadings to rest upon is void, because pleadings are the very foundation of judgments and decrees. *Cresap* v. *Bank*, decided at the present term; *Bierne* v. *Ray*, 49 W. Va. 129; *Sayre* v. *Harpold*, 33 W. Va. 553. There could not have been and was not an adjudication in the Williams case of the $1,500.00 item mentioned in the policy because there was neither pleading nor proofs to warrant such adjudication. Therefore, the defendant's plea of *res judicata* is not established by proof.

Plaintiff contends that the court erred in sustaining defendant's demurrer to plaintiff's evidence, and in its said judgment for the defendant against plaintiff for costs.

The defendant in its specification and notice of defense filed and relied on by it in said action, in part says, that the interest of the insured at the time the policy was issued was other than unconditional and sole ownership; that a change, other than by the death of the insured took place in the interest, title and possession of the subject of insurance, in this, that after said policy was issued and without notice to this defendant, and without its consent, the property thereby insured was assigned, transferred and conveyed to one Edgar D. Williams, by deed from said S. D. Williams and Lilly C. Williams, his wife, bearing date on the 1st day of April, 1901; that the insured thereafter had no interest or title of any kind, or character in the subject of the insurance set forth in the declaration; that after said policy of insurance was issued and delivered, the hazard thereof was increased by means within the control and knowledge of the insured; and that said S. D. Williams, the party to whom the said policy was issued and delivered, transferred, sold and conveyed the subject matter of insurance, as above set forth, by which the hazard of said insurance was increased. Defendant also filed an amended plea, specifications and notice, wherein it averred that, on the 7th day of January, 1899, said S. D. Williams and his wife, executed a deed of trust, conveying said

property to one E. C. Carver, trustee, in trust to secure the Bank of Cairo in the payment of a certain note for $3,000.00 therein fully described; that said trust deed was a lien and encumbrance upon said property at the time said policy was issued, and was unknown to said defendant and was without its knowledge or consent, and was in violation of the warranties, provisions and conditions in the said policy contained, in this, that said policy provides:    This entire policy shall be void if the insured has concealed or misrepresented, in writing, or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated therein. Defendant further averred that plaintiff had not, nor had any one for it within the time in said policy specified rendered a statement to the defendant, or to any one for it, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and all others in the property; the cash value of each item thereof and the amount of loss thereon; all encumbrances, whether valid or not, covering any of said property, etc.

The plaintiff replied generally to the pleas and specifications filed by the defendant, and denied the truth thereof; and also replied thereto specially, and says that plaintiff had nothing to do with any of the alleged changes of ownership of the subject matter of insurance at any time; and had no notice or knowledge thereof.

Plaintiff further avers that the defendant did know of said changes of ownership, and transfers in the title of the subject matter of said insurance; that C. D. Cutright, the duly accredited general agent of the defendant, after the deed from said S. D. Williams to Edgar D. Williams, for the subject matter of said insurance, had been made, with the full and complete knowledge of said deed, and in whom, the title of said property was then vested thereby, accepted a premium upon said policy of insurance, and thereby waived all claim of the forfeiture of the policy sued upon, and thereby completely estopped the defendant company from setting up the same; and that even, if plaintiff had knowledge of said transfer of the title of the subject matter of insurance as aforesaid, yet the defendant company is estopped by reason of the acceptance as aforesaid of

said premium upon the policy sued on, after said transfer had been made, and at a time when said company well knew of said transfer as aforesaid. Plaintiff's special replication, in effect, contends, that the act of the insured without its knowledge, consent, or ratification, could not prevent its recovery from the defendant upon said policy.

This contention is untenable. The person named in the policy as owner and not the mortgagee (in this case, the trust creditor) to whom the loss is payable, is the insured within the purview of a condition of forfeiture. Kerr on Ins. 429. The authorities examined upon this question hold that no matter to whom the loss may be made payable it cannot be recovered by any one, if, by the terms explicitly set forth in the policy, no right of action can accrue at all upon the violation of some specific condition, whose observance by the insured is made necessary to fix the insurer's liability. *Agricultural Ins. Co. v. Hamilton,* 51 Am. St. R. 457; *Kabrich v. State Ins. Co.,* 48 Mo. App. 393; *Oakland Home Ins Co. v. Bank of Commerce,* 58 Am. St. R. 663; *Bently v. Ins. Co.,* 40 W. Va. 738. In this case the plaintiff has no better right than the insured would have had, so far as the question of the forfeiture of the policy is involved.

It is shown by the evidence that the building insured by the defendant and described in the policy as aforesaid, was totally destroyed by fire on the 21st day of December, 1901; that, at the date of the policy, and at the time of said fire, and loss of the insured property, and at the time of the institution of the plaintiff's action, the said  S. D. Williams was indebted to plaintiff in the sum of $3,000.00, evidenced by his note which had, before the date of said policy, come into the hands of the plaintiff bank, in the regular course of business; and that the payment of said note was secured by said deed of trust made by S. D. Williams and wife, bearing date on the 7th day of January, 1899, which conveyed said property to E. C. Carver, trustee, for that purpose. The deed of S. D. Williams and wife, bearing date on the 1st day of April, 1901, to Edgar D. Williams for said insured property, was also put in evidence, and is part of the record. It is also proved that, at the time the policy was issued, one Hoff occupied the property and controlled it as the tenant of S. D. Williams; that Edgar D. Williams took

possession of it, under his deed, about May 12, 1901, and together with his mother and sister, occupied it until about the 12th day of November, next following, when they left it, one Forward being then put in possession of it by Edgar D. Williams, who then left and went to Moore, in Tucker County, West Virginia, where he remained until about the 30th day of December, 1901; that neither Edgar D. Williams, his mother, sister nor father, S. D. Williams, was in possession of the property from the 12th day of November, 1901, up to the time of the fire; that Mr. Forward was not in possesion thereof at the date of the policy; and that Edgar D. Williams had no communication with the company or with Cutright from the 12th day of November, 1901, the day on which said Forward was put in possession of the property, until after the said fire.

It is further shown by the evidence that the policy in question was issued and delivered to S. D. Williams by C. B. Cutright whose name appears thereon, as follows: "Countersigned by C. B. Cutright, Agent;" that Edgar D. Williams took charge of the property after its conveyance to him and conducted a hotel therein; that Cutright first knew of the conveyance of the property to Edgar D. Williams on or about the 29th day of May, 1901; that there was no encumbrance on the property at the date of the policy except the said trust deed to secure the $3,000.00 note, which deed of trust was contemplated and indirectly referred to in the said provisions of the policy relating to payment of loss, if any, to the Ritchie County Bank as its interest might appear, at the time of fire; that there had never been any other suit brought against defendant for said $1,500.00 item; that the policy was not, at any time, presented by S. D. Williams, or any person for him to the company, or its agent with a demand or request for its consent to the conveyance or transfer of said property to said Edgar D. Williams; that no transfer of the policy by the company was ever made to Edgar D. Williams, and that no request was ever made to the company for such transfer.

Edgar D. Williams swears that he paid the premium on the policy in suit; that it was paid in and by two notes, which he gave to the insurance agent, C. B. Cutright, the same person, whose name appears on the policy; and that there were two

·other policies by different companies on the property issued by said Cutright as their agent.

Several notes were given in evidence, all signed by Edgar D. Williams, and each payable to the order of C. B. Cutright, at the Bank of Cairo, West Virginia, one for $70.00 at sixty days, and another for $65.00 at ninety days, both bearing date on the 13th day of April, 1901; another for $70.00 dated June 12, 1901, payable in ninety days, a renewal of the above mentioned $70.00 note; one for $40.00, dated July 12, 1901, at ninety days; another one for $40.60, dated October 12, 1901, at ninety days, and a check for $25.60, dated July 12, 1901, made and payable as aforesaid, which notes first given, and the renewals thereof, and said check were made and delivered to Cutright, and paid by Edgar D. Williams, as he states, for said three premiums. It is claimed that said notes, some being renewals of the others, and said check were given to, and collected by, said Cutright, as the agent of the defendant company; but it will be observed that said notes and check and each of them are, on the face thereof, payable to Cutright individually, and not as "agent." There is no proof in the record showing or attempting to show that he was authorized by the company to receive notes or checks for premium due to it, or that it ever had any notice at any time of said transactions or any of them. It is also apparent that the notes and check, and each of them were made and delivered by Edgar D. Williams to Cutright after the conveyance of the insured property to Edgar D. Williams by S. D. Williams.

The plaintiff moreover contends that Cutright wrote the ·other insurance on the property, after the change in its ownership, occupancy and conveyance thereof as aforesaid; that he accepted payment of premiums on the policy sued on after the said conveyance, with full knowledge of the facts aforesaid; that he thereby waived any forfeiture of the policy, and that, by reason of the acts and conduct of Cutright, the defendant is estopped from claiming a forfeiture of the policy by Williams, and from denying a waiver of such forfeiture by Cutright, as agent of defendant.

The evidence proves that, after the policy sued on had been issued by the company and delivered to S. D. Williams, a change of title, occupancy and possession of the insured property took place, by reason of the voluntary act of the insured, to-wit, by

the deed from Williams and wife to Edgar D. Williams, without the knowledge or consent of the company; that another change of occupancy and possession of said property took place about six weeks before its destruction by fire, and that when the said fire occurred, neither S. D. Williams, nor any member of his family, nor said Edgar D. Williams, was in possession thereof, all of which was without the knowledge or consent of the company, unless the acts and knowledge of Cutright aforesaid be taken and held as the acts and knowledge of the company, and in legal effect, a waiver by it of the conditions in the policy contained. The insurer undertakes to guaranty the insured against loss or damage, and to make certain payments upon the terms and conditions agreed upon and specified in the policy, which embodies the agreement of the parties, and upon no other; and when called upon to pay in case of loss the insurer may justly insist upon the fulfillment of those terms. The terms of the policy constitute the measure of the insurer's liability, and if it appears that the contract has been terminated by the violation, on the part of the assured, of its conditions, there can be no recovery. Kerr on Ins. 430. The company assumed the risk of the insurance under the conditions existing at the time of the completion of the contract. It contracted with reference to the title to, and occupancy of the property; and provided that no change should thereafter, during the life of the policy, be made therein without its consent, given in a specified manner. Such provisions are a guard against the diminution in the strength of the motive which the insured may have to be vigilant in the care of his property; and the substantial diminution of interest in the property insured has been suggested as a test of the kind of transfer or change of title which will avoid the policy. In the case of *Ayers* v. *Hartford Ins. Co.,* 17 Ia. 172, it is said: "The object of the insurance company by this clause is that the interest shall not change so that the assured shall have a greater temptation or motive to burn the property, or lose interest or watchfulness in guarding and preserving it from destruction by fire. And any change or transfer of the interest of the insured in the property, of a nature calculated to have this effect, is a violation of the policy."

In the case of *Northern Assurance Co.* v. *Grand View Building Association,* 183 U. S. 308, it is said, that contracts in writ-

ing, if in unambigous terms, must be permitted to speak for themselves and cannot, by the Courts, at the instance of one of the parties, be altered or contradicted by parole evidence, unless in cases of fraud or mutual mistake of facts; that this principle is applicable to cases of insurance contracts as fully as to contracts on other subjects; * * * that it is competent and reasonable for insurance companies to make it a matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered; * * * that insurance companies may waive forfeiture caused by non-observance of such conditions; that where waiver is relied on, the plaintiff must show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition; that where the waiver relied on is the act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with full knowledge of the facts, ratified the action of the agent.

Three of the Justices of the Supreme Court in the case cited dissented from the opinion of Mr. Justice Shiras, but upon what point or points therein does not appear. Whatever difference of opinion there may be among judges as to the legal effect of the acts of agents, during the negotiations of the parties, in the inception of the contract, there can be no room for difference as to the law governing the acts of agents and the parties to the contract, after its completion and delivery; all of the acts of S. D. Williams relied on by the defendant as a forfeiture of the policy, and all of the acts and transactions of Cutright, relied upon by the plaintiff, as, in legal effect, a waiver of the forfeiture, if any, by the defendant, were after the delivery of the policy to the insured.

There is no proof that, at the time of the execution and delivery of the aforesaid notes and check by Edgar D. Williams, Cutright was yet the agent of defendant. But if we may presume that he continued to be such agent until that time, it is not shown that his acts in receiving the notes and check were authorized by the defendant, in the manner above stated, or otherwise, or that such acts, or any of them, ever came to the knowledge of the defendant.

In the case of *Maupin* v. *Scottish Union* & *National Ins. Co.*, 53 W. Va. 557, the following expressions are cited, with approval by BRANNON, JUDGE: "If one who is dealing with an agent knows that he is acting under circumscribed and limited authority, and that his act is outside of and transcends the power conferred, the principal is not bound, whether the agent is general or special, because principals may limit the power of one as well as the other. If a policy of insurance declares that no officer or agent has power to waive any provision or condition ambraced in a printed or authorized policy, but may waive certain added conditions, provided such waiver is written on or attached to the policy, and attempted waiver by an agent of one of the conditions which the policy declares he shall not have power to waive, is inoperative and void. *Quinlan* v. *Providence Ins. Co.*, 133 N. Y. 356, 28 Am. St. R. 654. Where a policy of insurance itself contains an express limitation upon the power of the agent, he has no right to contract, as against the company, with the party to whom the policy has been issued, so as to change its terms, or dispense with the performance of any part of the consideration, either by parol or in writing, and the insured is estopped by accepting the policy from setting up powers in the agent at the time in opposition to the conditions in the policy. *Wiedert* v. *State Ins. Co.* 19 Oregon 261, (20 Am. St. 809). To the same effect *Cleaver* v. *Ins. Co.*, (Mich.) 8 Am. St. R. 908; *German Ins. Co.* v. *Heiduk*, 30 Neb. 288, (27 Am. St. R. 402). We must take the contract (policies) as we find them and enforce them as they read, says the late case *Robacg* v. *Ins. Co.*, 62 N. Y. 47, (20 Am. R. 451); 88 Am. St. R. 779."

It seems very plain that there was a forfeiture of the policy by reason of the conveyance of the insured property by said S. D. Williams and wife to Edgar D. Williams as aforesaid; and that the acts of Cutright above stated did not amount to a waiver of such forfeiture, on behalf of the defendant.

Plaintiff also complains that the circuit court erred in rejecting the proof of loss of the insured building offered by it in evidence; and contends that said proof was and is sufficient. The statement or proof of loss is signed and sworn to by said S. D. Williams, bears date on the 11th day of February, 1902, and, among other things, says that, on the afternoon of Sunday,

December 22, 1901, from a gas stove in a bed room, as he is informed and believes, a fire originated that totally destroyed the three story, metal roofed building and its contents, insured by him, situate in Cairo, Ritchie County, West Virginia, and occupied for a hotel, mercantile and office purposes. It then states the interest of the plaintiff, by reason of its deed of trust; the conveyance of the property to said Edgar D. Williams; the other insurance thereon; and by whom, and for what purpose the building was occupied and used at the time of the fire.

The sufficiency or insufficiency of the proof of loss depends upon the construction, which we may give to our statute relating to insurance and insurance companies. Chapter 33 of the Acts of the Legislature of 1899 is entitled: "An Act fixing the liability of fire insurance companies." It was passed February 21, 1899, and took effect ninety days thereafter. It was therefore in force and effect at the time the policy in question was issued and delivered to S. D. Williams. The language of the Act is: "All fire insurance companies doing business in this state shall be liable, in case of total loss by fire or otherwise, as stated in the policy on any real estate insured, for the whole amount of insurance stated in the policy of insurance upon said real estate; and in case of partial loss by fire or otherwise, as aforesaid, of the real estate insured, the basis upon which said loss shall be computed, shall be the amount stated in the policy of insurance effected upon said real estate, and the insured shall have the right to enforce his claim for said loss in any court having jurisdiction."

Valued policy laws are now in force in many of the states of the union besides West Virginia. These statutes vary somewhat in phraseology but all have the same purpose. In Wisconsin, which enacted the first of such statutes, it is provided, that, "whenever any policy of insurance shall be written to insure any real property, and if the property insured shall be wholly destroyed without criminal fault on the part of the insured or his assigns the amount of insurance written in such policy shall be taken conclusively to be the true value of the property when insured, and the true amount of loss and the measure of damages when destroyed."

In *Oshosh Gas Light Co.* v. *The Germania Fire Ins. Co.,* 71 Wis. 454, the court says, after quoting the law: "Under this

statute it is settled by frequent adjudications that the actual value of such real estate when insured is wholly immaterial. * * * The statute must be regarded as a part of the contract of insurance, and the amount written in the policy as liquidated damages as agreed upon by the parties, is conclusive, as to the amount of the damage (if any) for which the insurer is liable by reason of the loss."

In *Reilly* v. *Franklin Ins. Co.,* 43 Wis. 449, it is held that: "As the statute rests upon grounds of *public policy,* the conclusive effect of the amount of insurance written in the policy upon the measure of damages, is not altered by a stipulation in the same instrument that the damages should be established according to the true and actual cash marketable value of the property when the loss happened." *Thompson et als.* v. *Citizen's Ins. Co..* 45 Wis. 388; *Seuk et als.* v. *Miller's Nat. Ins. Co.,* 74 Wis. 67.

In *Caledonian Ins. Co.* v. *Cooke,* 101 Ky. 412, 418, the court says: "It is perfectly evident that the legislature intended to remedy the evil of overvaluation in insurance, and in doing so followed the example of many other States of the Union by making the insurer responsible for overvaluation, and to do this the remedy was and is to compel the insurer to pay the full amount (in case of total loss) for which they write their policy, and on which the premium is calculated and collected, subject only to be diminished by any deterioration in value between the dates of the policy and the loss, and providing further for relief for fraud on the part of the insured, where the insurer is deceived thereby. In other words, the law says to insurance companiees, if you want to pay only a fair price for property that may be destroyed, you must adjust that matter before the policy is issued. and if you fail to do so, you will be the loser, as the law fixes the amount you are to pay by the amount you collect premium on, subject to deterioration in value after the date of the policy. As to whether this is right we do not say. It is the law, and, if recognized and obeyed in spirit, would no doubt remedy a great growing evil in the country. From what we have said, it is manifest that we are of opinion that the appellant was bound to pay the appellee the full face of his policy, as the case is presented. As to the arbitration alleged, there was nothing to arbitrate." We adopt the language of the Court in

the last case cited as peculiarly appropriate in explanation of the intention of the legislature in the enactment of our insurance law above quoted.

The language of the act is broad and unambigious. Under it, the insurance company shall be liable in case of *total loss* by fire or otherwise, as stated in the policy, on any real estate insured, for the whole amount of insurance upon said real estate, any provisions in the policy to the contrary notwthstanding. All provisions in a policy in conflict with a valued policy statute are void, and hence a provision for the appointment of arbitrators in case of loss is ineffective where the property is wholly destroyed. Elliott on Ins. section 318. The proof of loss informed the defendant of the total loss of the insured property, and of the liability of the company under the policy and the statute, as claimed by the plaintiff. The reasons for the insertion of the many statements in proof of loss where the policy is not issued under, and governed by, a valued policy statute, having ceased, in this case, we hold that the proof of loss offered in evidence by the plaintiff, but rejected by the court, was and is sufficient.

But upon the whole case, we find no reversible error. We therefore affirm the judgment.

*Affirmed.*