FIRE ASSOCIATION OF PHILADELPHIA

*v.*

EVALINE C. WARD, *et al.*

(CC ·718)

Submitted April 15, 1947. Decided.May 20, 1947.

*Arnold & Crawford,* for plaintiff.

*Kump, Kump & Wooddell,* for defendants.

RILEY, JUDGE:

This certificate involves the sufficiency of a bill of complaint filed in the Circuit Court of Randolph County on behalf of the Fire Association of Philadelphia, a corporation, against Evaline C. Ward, Wayne Stalnaker, and The Federal Land Bank of Baltimore, and others, wherein said association, under the provisions of a "union mort-

gage clause" attached to a policy of insurance issued in the name of Evaline C. Ward, seeks subrogation to the rights of the defendant bank in the amount of $831.90, which the plaintiff paid the bank after a fire loss. The circuit court having sustained a demurrer interposed by defendant Stalnaker, the pleading is here on certificate.

The bill charges, among other things, that on October 25, 1924, Evaline C. Ward, owner in fee of a tract of land in Randolph County, with improvements thereon, together with her husband mortgaged some to the bank to secure a loan of $2,500.00, represented by a note; that by the terms of the mortgage Evaline C. Ward individually, and on behalf of her personal representatives and assigns covenanted "to insure, and pending the existence of this mortgage, to keep insured * * * the improvements on the hereby mortgaged property to the amount of at least Eight Hundred Dollars" and to cause the policy to be so framed "as in the case of fire to enure to the benefit of the said Bank, its successors or assigns, * * * and to deliver said policy to the said Bank"; that the mortgage was duly recorded and the policy obtained and delivered; that on February 4, 1928, mortgagor and husband, by a deed duly recorded, conveyed the property, subject to the mortgage, to Wayne Stalnaker, the latter agreeing to pay the bank's debt, and to support the Wards during their lives; that a vendor's lien was retained in the deed to Stalnaker, to secure both the bank's indebtedness and the maintenance and support of the Wards.

The bill further charges that the bank's mortgage has not been paid off in accordance with the tenor and effect of the mortgage; that on November 2, 1931, the improvements were destroyed by fire; that prior to such fire plaintiff insurance company, on October 14, 1930, and in the absence of knowledge or information of the deed to Stalnaker, issued a three-year policy in the amount of $1,000.00, which policy provided, among other things, as did the preceding policies, that it should be void (a) if the interest of the insured be other than unconditional

and sole ownership; or (b) if the ground upon which the building stood was not owned by insured, and which policy had attached thereto a "Mortgagee clause with full contribution," better known as a "union mortgage clause," which provided, in part, that: "Whenever this Company shall pay the mortgagee any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee the whole principal due, or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee to recover the full amount of its claim."

In addition to the foregoing the bill alleges that the policy, in so far as Evaline C. Ward was concerned, was void because, at the time of its issuance, Evaline C. Ward was not the owner of the property, and that the buildings covered by the policy were not on property owned by her.

It is further averred that, prior to the fire, neither plaintiff nor the bank had knowledge of the change in ownership of the property, nor did Stalnaker have any knowledge pertaining to the policy of insurance issued to the Wards; that Stalnaker procured other insurance, payable to himself, which did not contain a mortgage clause and did not show any interest in the bank in the property; that, after the fire, claim was made upon plaintiff by the bank for the payment of the full amount of the policy of fire insurance; that liability was denied to the Wards under the stated provisions of the policy of October 14, 1930, regarding unconditional ownership and lack of ownership of ground on which the property was located; that, notwithstanding the position regarding the

Wards, plaintiff, under the terms of the mortgage clause, was liable to the bank, and, upon making payment to the bank under said clause, became and was entitled to subrogation to the rights of the bank under the mortgage; that, under the contract of insurance, plaintiff paid the bank $831.90, being the pro rata amount for which it was liable to the bank, and on the 16th day of January, 1933, it obtained from the bank a subrogation receipt, under the terms whereof plaintiff, after the bank had been paid in full its debt of $2,500.00 (including said amount so received from the plaintiff) would be subrogated to the rights of the bank and to the lien existing upon said property; that said subrogation receipt was duly recorded, thereby notice being given to subsequent purchasers; that to the extent of $831.90, with interest, plaintiff was in equity the owner of the mortgage; that the Wards made payments, until March 29, 1946, at which time, including the $831.90, paid by plaintiff, the bank had received the full sum of $2,500.00 and interest, but neither the Wards nor Stalnaker paid the bank the sum of $831.90 paid by plaintiff to the bank; and that on the same day the bank assigned to plaintiff (1) the benefit of said mortgage to the amount of $831.90, with interest from January 16, 1933, which assignment, after recordation, gave notice that the mortgage had not been paid off and discharged; and (2) the note upon which there is a balance due and owing plaintiff of $831.90, with interest from January 16, 1933, until paid; that Stalnaker and the Wards, on December 18, 1945, conveyed to one Sneberger the real estate, subject to the morgtage; that Sneberger had full knowledge from the records that the mortgage was unpaid and that plaintiff was the owner of $831.90 thereof, with interest, the payment of which sum plaintiff was not entitled to enforce until the bank had been paid sums owing to it under the terms of the mortgage, policy of insurance, subrogation receipt and assignment.

And, finally, the bill of complaint alleges that Evaline C. Ward and her husband are indebted to plaintiff in the sum of $831.90, with interest from January 16, 1933, at

five and one-half per cent yearly; and that said debt and interest are part and parcel of the mortgage debt, are secured under the terms thereof, and are due and owing to plaintiff.

The bill of complaint prays for a decree against the Wards for $831.90, with interest; that said sum be adjudged a lien on the property, and secured to plaintiff under the mortgage; and that the real·estate be sold for the purpose of discharging the mortgage.

In his demurrer Stalnaker takes the position (1) that since Evaline C. Ward was not the owner of the land or· buildings thereon on October 14, 1930, the date the policy in question was issued, the policy was void from the time of issuance, and as a result no interest could inure or inhere to the benefit of the mortgagee bank, plaintiff insurance company, or any other person thereunder; (2) that the plaintiff was a mere volunteer; and (3) that there was no benefit due Ward or Stalnaker himself. And, in support thereof, he cites the case of *Imperial Building & Loan Association* v. *Aetna Ins. Co.,* 113 W. Va. 62, 166 S. E. 841. In point 2 of the syllabus of that case, the Court held: "When the mortgagee has no interest in the insured property, the 'standard mortgage clause' attached to the insurance policy in its favor is invalid."

It is a rule of insurance law generally that the person taking out the policy must have an insurable interest in the subject matter of the insurance; and if such interest is lacking the policy is void. To hold otherwise would be to go against the spirit and purpose of the contract, as well as against public policy. Another general rule is to the effect that if a fire insurance policy is conditioned to be void in case of any misrepresentation whatever, any misrepresentation, whether material or not, will avoid it.

"A person usually has an insurable interest in the subject matter insured when he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termina-

tion, or injury by the happening of the event insured against." 44 C. J. S. 870, Section 175b. Hence, a mortgagor of property has an insurable interest therein, to the extent of its full value. 44 C. J. S. 883, Section 187a. In *Bowman v. Hartford Fire Ins. Co.,* 113 W. Va. 784, 169 S. E. 443, this Court held: "A vendor of real property who retains a vendor's lien to secure the purchase price has an insurable interest." Also see *Hamlet* v. *American Fire Ins. Co.,* 107 W. Va. 687, 150 S. E. 7. The mortgagee bank had an interest by virtue of its mortgage and note to the extent of the balance due it from the mortgagor: quite a different situation from that presented in *Imperial Bldg. & Loan Association* v. *Aetna Ins. Co., supra.*

The mortgagor not owning the land or improvements thereon at the time of the issuance of the policy, the insurance company was justified in denying liability to her under the policy. Yet, as stated above, the mortgagor did have an insurable interest sufficient to support the independent contract under the union mortgage clause, and, therefore, the bank's claim thereunder was a valid one, for which the plaintiff insurance company was liable. The latter, having made payment to the mortgagee bank, is entitled, under the terms of the union mortgage clause to subrogation to the bank's rights under the mortgage. See *Heldreth* v. *Federal Land Bank of Baltimore,* 111 W. Va. 602, 163 S. E. 50, in which this Court, in point 2, syllabus, held: "Where an insurer in a fire insurance policy denies liability to the insured for legal cause, it is entitled to be subrogated to the rights of the mortgagee in the amount paid to it by the insurer."

The union mortgage clause of the policy has been held by this Court to be a separate contract for the benefit of the mortgagee. *Fayetteville Building and Loan Association* v. *Mutual Fire Insurance Company of West Virginia,* 105 W. Va. 147, 149, 150, 141 S. E. 634. See Judge Maxwell's concurring note to *Imperial Building & Loan Association* v. *Aetna Ins. Co., supra,* page 70. And the fact that the policy was void as to the mortgagor, Evaline C. Ward,

did not vitiate the effect of the clause in so far as the respective rights and obligations of the bank and the insurance company are concerned. Under the portion of the union mortgage clause, heretofore quoted in this opinion, which was inserted in the policy in conformity with Acts of the West Virginia Legislature, 1923, Chapter 18, Section 68, (Code, 33-4-7) the insurance company was expressly required to pay to the bank, as it did, the controverted sum of $831.90, with interest, and in turn the insurance company had the express right to be subrogated to the right which the bank had under the mortgage to enforce the payment of the money secured thereby. Stalnaker, in our opinion, if he did not have actual notice that the mortgage required insurance, with the usual mortgage clause attached, had constructive notice thereof by reason of the fact that the mortgage of October 25, 1924, of Evaline C. Ward to the bank contained a provision requiring the mortgagor to keep the property insured under a policy or policies containing a mortgage clause for the benefit of the mortgagee, and by his assumption of the indebtedness secured by the mortgage in the deed whereby he obtained the property. But according to the allegations of the bill of complaint, which, on demurrer, must be taken as true, neither the insurance company nor the bank, at the time the policy of insurance in question was issued, had actual notice of Stalnaker's interest, and, because the Stalnaker deed was subsequent to the mortgage, the rights under the mortgage had vested. Furthermore, the insurance company and the bank were strangers to the Stalnaker transaction and constructive notice cannot be imputed to them. *Webb* v. *Ritter*, 60 W. Va. 193, pt. 15, syl., 54 S. E. 484; *Parks* v. *Morris, Layfield & Co.*, 63 W. Va. 51, pt. 5, syl., 59 S. E. 753; *Carden* v. *Bush*, 109 W. Va. 655, syl., 155 S. E. 914.

Being of the opinion that the bill of complaint is sufficient, the ruling of the circuit court is reversed and the cause remanded.

*Ruling reversed and*
*cause remanded.*

Fox, PRESIDENT, dissenting:

I cannot concur in the decision of the majority in this case. Its basis is a theory of equity upon which an equitable subrogation in favor of the plaintiff is supposed to rest; a subrogation contract, to which the owners of the property, against whom a lien is sought to be decreed, were not parties; and upon an alleged assignment of a mortgage debt, which, in my opinion, had been liquidated under the contract between the original parties thereto, and which, therefore, did not exist at the date of the assignment.

The situation presented is this: Evaline C. Ward, one of the defendants, mortgaged her farm, to secure a loan from the Federal Land Bank of Baltimore. She was required to insure the improvements on the mortgaged property against loss by fire, and to keep the same so insured while the loan remained unpaid. She sold and conveyed her farm to Wayne Stalnaker, he assuming the payment of the mortgage loan, and agreeing to provide life maintenance for Evaline C. Ward and her husband, to secure which undertaking, on the part of Stalnaker, a vendor's lien was retained upon the face of said conveyance. Subsequent to this conveyance, the land bank secured a renewal of said insurance in the name of Evaline C. Ward, instead of the then owner, Stalnaker. While the record does not clearly show who paid the premium on this renewal, I think it is fair to assume that the same was paid by the land bank, and added to the mortgage debt, so that Stalnaker paid it in the final settlement of the mortgage debt. This renewal, under the terms of the policy, was void as to Ward, but effective as to the land bank; and when loss occurred there was paid to the land bank by the insurance company, the sum of $831.90, which was applied as a credit on the mortgage debt, and, in my opinion, operated to liquidate that debt, to the extent of the payment so made. Notwithstanding this partial liquidation, the land bank executed what is termed a subrogation receipt, in favor of the insurance company, and

later attempted to assign $831.90 of its supposed debt to the insurance company, and on that assignment, together with the subrogation agreement, this suit is based.

When the insurance company renewed the insurance policy on the property aforesaid in the name of Ward, it issued what was, in effect, a void policy so far as Ward was concerned. But Ward and the land bank, each having an insurable interest in said property by reason of the vendor's lien and the mortgage aforesaid, the policy, as a whole, was probably not entirely void from the beginning. An inspection of the records of Randolph County would have disclosed that the ownership of the insured property was not vested in Ward at the time of the renewal, but the insurance company may not have had actual notice, or even be charged with constructive notice of said transfer of title. On the other hand, it appears from the record that Stalnaker, the then owner of the insured property, had no notice of the renewal of the policy, and for his own protection took out insurance on the same property with another company. The policy so issued, and for which the insurance company was compensated by payment of premiums, protected, in a technical sense, only the land bank; but practically, it inured to the benefit of Stalnaker, to the extent of the amount paid following the loss of the insured property, by reducing the mortgage debt which he had assumed. That protection, however, will be entirely lost if, in turn, the insurance company shall still enforce the mortgage against the land to the extent of said payment, the effect of which will be to place the burden upon Stalnaker or his grantee.

The asserted justification for upholding plaintiff's claim is the subrogation agreement contained in the renewal policy, mentioned in the majority opinion, and upheld by this Court in the case of *Heldreth* v. *Federal Land Bank of Baltimore,* 111 W. Va. 602, 163 S. E. 50; but it must be remembered that in the *Heldreth* case, the insured, after the issuance of his policy, took out additional in-

surance, which invalidated his policy, and when loss occurred the insurance company, as in this case, was, notwithstanding the invalidity of the policy as to the insured, liable to a mortgagee; and having paid a certain sum of money was held to be entitled to subrogation as against the insured, or the property covered by the mortgage. In that case, the subrogation agreement was a part of the contract between the insurer and the insured; and the insured having violated the contract, the enforcement of the penalties therefor against him was justified. In the case at bar, there was no contract between the insurance company and Stalnaker, the owner of the property insured, and we think it can be said that there could not have been a contract between the insurance company and Ward, because Ward had no knowledge of the renewal policy, did not accept it, and, therefore, was not bound by its terms.

It may be, as held in the majority opinion, that the renewal policy amounted to a separate and independent agreement between the land bank and the insurance company, under which the insurance company was liable only to the land bank; but, in my opinion, that fact does not furnish a sufficient basis for *ex parte* action on the part of the insurance company and the land bank, the effect of which was to impose upon the person who had assumed the payment of the mortgage debt, but who was not a party to the insurance contract, the burden of the loss which was insured against. That is what will happen in the event plaintiff prevails in this suit. In my opinion, when the insurance company settled the loss aforesaid with the land bank, the mortgage debt was reduced to the extent of $831.90, and there did not arise therefrom, in favor of the insurance company, either a legal or equitable right to an assignment of, and the collection of that amount by enforcing a lien against property covered by the mortgage.

The insurance company cannot, in equity, complain that under its policy contract it was bound to the land

bank, notwithstanding the invalidity of the policy issued to Ward; because it was in the business of insuring property against loss by fire, and took the normal risk involved. In meeting its obligation to the land bank, it is not, in my opinion, entitled to be reimbursed for its outlay and loss, as against a person not a party to the agreement under which it seeks such reimbursement. Presumably, the loss of the improvements on the mortgaged property by fire lessened, if not impaired, the land bank's security for its loan, and that impairment was made good when the insurance company paid the amount aforesaid in settlement of its policy obligation. That was the object of the policy, and the insurance company, in meeting the loss, did nothing more than comply with its legal obligation. It cannot transfer its obligation to a third party against his will, under a supposed contract to which he was not a party. Had Ward been the owner of the property at the time of the fire, and the policy had become invalid by reason of some act on her part, which might have been a subsequent conveyance of the insured property, the subrogation clause would have been binding under the decision in the *Heldreth* case; but I do not believe it should be held binding to the extent that it enabled the land bank and the insurance company, by *ex parte* action on their parts, to impose, in effect, a liability against a third party not a party to the insurance agreement. Equity deals with realities, and it is obvious, of course, that the effect of the majority opinion is to impose this burden on Stalnaker or his grantee.

I would affirm the ruling of the Circuit Court of Randolph County.