358 S.E.2d 829

**William FILIATREAU, et al.,**

v.

**ALLSTATE INSURANCE CO.**

No. 16575.

Supreme Court of Appeals
of West Virginia.

July 1, 1987.

---

M. Jane Glauser, James E. Seibert, Seibert, Kasserman, Farnsworth, Gillenwater, Glauser & Richardson, Wheeling, for appellants.

Charles D. Bell, Wellsburg, for appellee.

BROTHERTON, Justice:

On December 29, 1976, Mary V. Ratcliffe contracted to sell a building located in Wheeling, Ohio County, West Virginia, to William F. Filiatreau for the sum of $32,-000. A $1,000 down payment was made and held in escrow by the real estate agent to be applied to the purchase price at the closing of the sale. The printed form contract contained the following language typed in:

> It is further mutually understood and agreed that the risk of loss or damage to said premises by fire or otherwise until delivery of said deed is assumed by seller.

According to the contract, transfer of the property was to take place on or before January 27, 1977.

On December 30, 1976, William Filiatreau applied for a fire insurance policy with Allstate Insurance Company. An Allstate agent issued a binder for $40,000 in fire insurance on the building. Fire policy # 18–047–258–F was issued and dated December 31, 1976, to be effective for one year.

The property in question was destroyed by fire on January 6, 1977, prior to the closing of the sale.

Filiatreau did not complete the purchase pursuant to the sales agreement, nor did he institute any proceeding for specific performance. Instead, Filiatreau purchased the damaged property for the sum of $9,000, and thereafter spent $25,000 repair-

ing the property, plus $500 in closing costs, for a total expenditure of $34,500. Filiatreau thereafter filed a claim with Allstate for the fire insurance in the amount of $40,000, claiming the building to be a total loss. The claim was denied.

Filiatreau filed a complaint on March 9, 1977, in the Circuit Court of Ohio County, seeking to compel Allstate to pay the insurance proceeds. After considerable discovery by the parties, Filiatreau filed a motion for summary judgment. In response to this motion, the Circuit Court of Ohio County, West Virginia, by order dated the 22nd day of February, 1984, granted summary judgment in favor of the plaintiffs in the amount of $40,000, which was the face amount of the fire insurance policy issued by Allstate. Allstate appeals to this Court citing as error that Filiatreau had no insurable interest and that he suffered no loss when the building burned.

On the initial appeal, the record in this case was not sufficient to support a decision. Several questions important to the determination of the case remained yet to be answered. We therefore remanded the case to the circuit court to answer certain questions. *See Filiatreau v. Allstate*, 175 W.Va. 746, 338 S.E.2d 225 (1985). The answers to our questions added the following to our understanding of the case. The $1,000 deposit was returned to Filiatreau on the day of the closing. Filiatreau was damaged only to the extent of his loss of use of the $1,000 in the original sales contract from December 29, 1976, through the closing on the fire-damaged property on December 20, 1977, the loss of rental income on the property, and the cost of securing fire insurance. The original contract was not abandoned, but was continued, although a new understanding was reached on the price. Finally, the seller also had a fire insurance policy on the house in the amount of $32,000, which amount was paid to her.

## I.

The first issue we address is whether or not Filiatreau had an insurable interest in the subject property on the date that it burned. It is well established that the person taking out a fire insurance policy must have an insurable interest in the subject matter, and if such interest is lacking, the policy is void. *See Fire Ass'n of Philadelphia v. Ward,* 130 W.Va. 200, 42 S.E.2d 713 (1947). In this case, Filiatreau had contracted to purchase the property. Therefore he had equitable title to the property. It is generally recognized that equitable title to real estate gives an insurable interest to the equitable title holder sufficient to insure it against loss by fire. *See Scott v. Dixie Fire Insurance Co.,* 70 W.Va. 533, 74 S.E. 659 (1912).

Allstate argues that the general rule is not applicable in this case because the contract put the risk of loss on the seller. Therefore when the building burned, the buyer had no risk. We cannot accept this reasoning. The buyer in this case paid a down payment, had arranged for financing, and was anticipating rental income from the property. He had a risk of pecuniary loss in the building. "A person usually has an insurable interest in the subject matter insured when he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against." *See Fire Ass'n of Philadelphia,* 130 W.Va. at 204–05, 42 S.E.2d at 716. The insured's risk of loss in this case was sufficient to create an insurable interest in the buyer, even though the contract stated that the risk of loss was on the seller.

## II.

The next issue in this case is how our "valued policy" statute, W.Va.Code § 33–17–9 (1982)[1] affects the amount of Mr.

---

1. W.Va.Code § 33–17–9 (1982), states:
   All insurers issuing policies providing fire insurance on real property situate in West Virginia, shall be liable, in case of total loss by fire or

otherwise, as stated in the policy, for the whole amount of insurance stated in the policy, upon such real property; and in case of partial loss by fire or otherwise, as aforesaid, of the real

Filiatreau's recovery. Normally, an insured must prove the amount of his loss. W.Va.Code § 33–17–9 entitles the insured in a fire insurance case to the face value of the policy "in case of total loss by fire or otherwise."

Allstate argues that it would be unfair in this case to allow payment to Filiatreau of the $40,000 insurance policy because it would constitute a windfall. The total expenditure of purchasing the damaged property and repairing it was only $34,500. This is only $2,000 more than the $32,500 which would have been spent had the property not burned. Therefore, Allstate argues that Filiatreau would be receiving a $38,000 windfall if the entire amount of the insurance were paid.

We agree that Filiatreau would receive a windfall. Nevertheless, this alone does not avoid the workings of the valued policy statute. The purpose of the statute was to prevent insurance companies from over-valuing the insured structure for premium purposes, thereby allowing them to collect an excess premium and later contest the value when there is a loss. It was contemplated by the legislature that the insured would receive a windfall in certain cases and that the threat of this windfall would correct insurance companies' behavior.

Nevertheless, there are situations where the valuation set forth in the policy will not be binding. One exception set forth in the statute is where insurance has been procured from two or more insurers covering the same interest in the real property. This section does not apply to this case, because Filiatreau was protecting an equitable interest and the seller was protecting her legal interest. Another situation which will affect the valuation of the policy is whether there has been fraud, misrepresentation, or collusion. *See DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 708 (Mo.1984) (en banc). There is no question of fraud or collusion in this case. However, there is an issue of misrepresentation.

■ It appears from the facts that Filiatreau told his insurance agent that he was buying a house and he needed insurance. The common law rule in West Virginia is that the risk of loss passes to the buyer upon the signing of the contract. *See Maudru v. Humphreys*, 85 W.Va. 307, 310, 98 S.E. 259, 260 (1919). Based on this information alone, a prudent insurance agent would issue a policy for the full amount of the structure immediately. However, an insurance company informed of the fact that the risk of loss was changed by contract to remain upon the seller, due to the valued policy statute, might only issue the policy for an amount nearer the buyer's actual risk of loss. A material omission can act as a misrepresentation. *See* W.Va.Code § 33–6–7 (1982). Therefore, there is a triable issue of fact as to whether Filiatreau omitted relevant information as to the risk of loss such that it would be considered a misrepresentation, and whether this was material.

■ Assuming there was a material misrepresentation, however, there is also a question of whether the insurance company waived their right to challenge that misrepresentation. An insurer has an obligation to attempt to ascertain the basis of the insured's interest in property prior to issuing a contract to insure the property. The insurer cannot issue a policy and collect premiums thereunder and later complain that the insured's interest was overvalued due to an omission by the insured if the insurer never attempted to ascertain that interest through reasonable inquiry. *See DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 708 (Mo.1984); 6 J. Appleman, *Insurance Law and Practice*, § 3828 (1972). Thus, even if it is found that the insured innocently misrepresented the extent of his insurable interest, the insured may still recover if it is found that the insurance company did not make a reason-

property insured, the liability shall be for the total amount of such partial loss, not to exceed the whole amount of insurance upon such real property as stated in the policy. This section shall not apply where such insurance has been procured from two or more insurers covering the same interest in such real property.

able investigation as to the extent of the interest.

There being an issue of fact for trial below, we reverse the summary judgment of the Circuit Court of Ohio County and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.