**SAYER BROTHERS, INC., Plaintiff,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant, Third-party Plaintiff**

v.

**Ames Department Stores, Inc., Third-party Defendant.**

**No. CIV.A. 2:00–0077.**

United States District Court, S.D. West Virginia, Charleston Division.

July 20, 2001.

Thomas R. Goodwin, Susan C. Wittemeier, Johnny M. Knisely, II, Goodwin & Goodwin, Charleston, WV, for Plaintiff.

John R. Fowler, Mary H. Sanders, Maria W. Hughes, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, WV, for Defendant St. Paul Fire & Marine Insurance Company.

Robert P. Martin, Robert L. McKinney, II, Bastien & Martin, Charleston, WV, for Third–Party Defendant Ames Department Stores, Inc.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are motions (1) by Plaintiff Sayer Brothers, Inc. (Sayer Brothers) for partial summary judgment on Count 1 (Sayer Brothers' thirty-five million dollar claim for breach of contract) and on Defendant St. Paul Fire & Marine Insurance Company's (St.Paul) counterclaim for declaratory judgment on the same issue; (2) by St. Paul for summary judgment denying Sayer Brothers' claim and finding St. Paul not liable for bad faith on its determination not to pay thirty-five million dollars to Sayer Brothers on the claim; (3) by Sayer Brothers for partial summary judgment as to liability alone on Counts 2 and 3 (breach of duty of good faith and fair dealing and unfair claims settlement practices); (4) by Third–Party (interpleader) Defendant Ames Department Stores, Inc. (Ames) for partial summary judgment (a) on its claims for compensation from St. Paul and (b) on a request for release from its lease with Sayer Brothers on grounds of impossibility; and (5) by Sayer Brothers to dismiss

Count II of Ames' Supplemental and Amended Cross–Claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ames leased a building from Sayer Brothers in Wilkinson, Logan County, West Virginia to operate a discount department store. To meet one of its obligations under the lease,[1] Ames insured the building against loss or damage by fire. Ames provided fire insurance by including the building and its contents under Ames' all-risk insurance policy issued by St. Paul, which provided coverage for hundreds of Ames stores in several states.[2] Also as required by the lease, Sayer Brothers was named an additional insured and provided a certificate of insurance. On October 1, 1998 the Sayer Brothers' building was totally destroyed by fire.

To adjust its claim with St. Paul, Sayer Brothers hired a public adjustor, who supplied estimates for rebuilding the building as it was at the time of the fire and with upgrades required by building code changes since its original construction.[3] Sayer Brothers also made claims under the policy for lost rents and other items.[4]

Although some insurance payments were made by St. Paul to Sayer Brothers and to Ames on Sayer Brothers' behalf, ultimately the parties were unable to settle Sayer Brothers' claims under the policy.

In January 2000 Sayer Brothers brought this civil action alleging breach of contract (Count 1), breach of the duty of good faith and fair dealing (Count 2), and unfair claim settlement practices in violation of *W. Va.Code* § 33–11–4(9) (Count 3). Sayer Brothers requested compensatory damages of seven million four hundred fifty-two thousand eight hundred thirty-four dollars ($7,452,834.00), as well as punitive damages and other appropriate relief. On August 14, 2000 by letter to St. Paul, Sayer Brothers raised its demand to thirty-five million dollars, the policy liability limit for a single occurrence, citing *W. Va.Code* § 33–17–9, the so-called "valued policy law."

St. Paul initially moved to dismiss, citing the absence of Ames as an indispensable party, based on Ames' claims to part of the potential insurance proceeds. On June 19, 2000 the Court granted St. Paul's alternative motion to assert a counterclaim for

---

1. The lease provides, in pertinent part:
    Tenant shall insure the 'Demised Premises' against loss or damage by fire and 'extended coverage' casualty including sprinkler leakage, flood, earthquake, vandalism, and malicious mischief. Such insurance shall be in an amount equal to the full insurable value of the 'Demised Premises'.... All policies maintained in force by Tenant in accordance with its obligations to insure shall name both Landlord and Tenant as insured parties as their interests may appear .... Tenant or Tenant's authorized agent shall provide to Landlord a certificate of such insurance ....
    (Mem. in Opp'n/Resp. by Sayer Brothers, Inc. to Ames Dept. Stores' Mot. for Partial Summ. J., Ex. A (Lease), ¶ 19D.)

2. The schedule of insurable values for Ames Department Stores, Inc. provided to the Court lists 178 stores or other building locations in seven states. (Reply Mem. in Supp. of Def. St. Paul's Mot. for Summ. J., Ex. C) It is not clear whether this list is complete, because it appears to start on Page 6, and penciled notations indicate a total of "335 locs" on the final page. Although the list provided is alphabetical, page 6 begins with New York state. Regardless, the Wilkinson store is covered.

3. Because the building site was in a flood plain and regulations for building in flood plains had changed since the original construction, if the building were rebuilt it would have to be erected upon seven-foot stilts.

4. The complaint also claims losses for personal property, business interruption, demolition costs, and site clearing.

interpleader and to join Ames. Ames then asserted a counterclaim against St. Paul and a cross-claim against Sayer Brothers, both of which were later amended and supplemented.

On March 2, 2001 St. Paul's motion to bifurcate Count 1 from Counts 2 and 3 was granted as to trial of the action, but discovery was not stayed on Counts 2 and 3. Discovery is now complete and all motions are ripe for disposition.

## II. DISCUSSION

### A. Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court

explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Serv. Corp.*, 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn*, 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Adver., L.P.* 57 F.3d 1317, 1323 (4th Cir.1995). Through this analytical prism, the Court evaluates the parties' motions.

### B. Valued Policy Law and Sayer Brothers' Thirty-five Million Dollar Claim

As discussed above, in August 2000 Sayer Brothers increased its demand on St. Paul from $7,452,834.00 to thirty-five million dollars, the single occurrence limit of liability under Ames' all-risk insurance policy. In making this claim, Sayer Brothers relied on the West Virginia statute, *W. Va.Code* § 33–17–9, commonly known as the "valued policy law," which provides in relevant part:

> All insurers issuing policies providing fire insurance on real property situate in West Virginia, shall be liable, in case of total loss by fire or otherwise, as stated in the policy, for the whole amount of

insurance stated in the policy, upon such real property[.]

W. Va.Code § 33–17–9 (2000 replacement volume).

Sayer Brothers argues its department store building was totally destroyed by fire. The "whole amount of insurance stated in the policy" is thirty-five million dollars. Thus, according to Sayer Brothers, St. Paul is liable to Sayer Brothers for that amount pursuant to the statute.[5] St. Paul counterclaimed for a declaratory judgment that the West Virginia Valued Policy Statute is not applicable to the policy in question. Sayer Brothers moved for partial summary judgment on its demand for thirty-five million dollars and on St. Paul's declaratory judgment counterclaim.

### 1. Valued Policies and Valued Policy Laws

Insurance policies for the purpose of valuation in the event of a total loss of property are of two kinds, valued or open. A valued policy is one in which the measure of the value of the property insured is agreed upon by both parties to the contract, so that in case of total loss it is not necessary to prove the actual value. 6 John Alan Appleman & Jean Appleman *Appleman Insurance Law and Practice* (*Appleman*) § 3827 (1972). An open policy is distinguished by the uncertainty of the amount at risk, which is not fixed in the policy, but must be ascertained by proof. *Id.* § 3823.

Many states now have laws, often termed "valued policy statutes," which govern valued insurance policies. *See Appleman* §§ 3829, 3830 (reviewing such statutes in twenty-three (23) states). West Virginia's valued policy law was first enacted in 1899. In its entirety it now provides:

All insurers issuing policies providing fire insurance on real property situate in West Virginia, shall be liable, in case of total loss by fire or otherwise, as stated in the policy, for the whole amount of insurance stated in the policy, upon such real property; and in case of partial loss by fire or otherwise, as aforesaid, of the real property insured, the liability shall be for the total amount of such partial loss, not to exceed the whole amount of insurance upon such real property as stated in the policy. This section shall not apply where such insurance has been procured from two or more insurers covering the same interest in such real property.

W. Va.Code § 33–17–9.

The basic purpose of the West Virginia valued policy law is "to prevent insurance companies from over-valuing the insured structure for premium purposes, thereby allowing them to collect an excess premium and later contest the value when there is a loss." [6] *Filiatreau v. Allstate Ins. Co.*, 178 W.Va. 268, 271, 358 S.E.2d 829, 832 (1987). The law makes the insurer responsible for overvaluation; it "compel[s] the insurer to pay the full amount (in case of total loss) for which it writes the policy, and on which the premium is calculated and collected[.]" *Ritchie County Bank v. Firemen's Ins. Co.*, 55 W.Va. 261, 47 S.E. 94, 101 (1904)(quoting *Caledonian Ins. Co. v. Cooke*, 101 Ky. 412, 41 S.W. 279, 280 (1897)). The statute has been held to re-

---

**5.** In its counterclaim Ames asserts that because it is the party insured by the policy, if the full value of the policy is thirty-five million dollars, that amount should be paid to Ames. (Ames Supplemental and Amended Counterclaims, Count III.)

**6.** Additionally, valued policy laws relieve the insured of the burden of proving the full value of his or her property when total destruction occurs. *See* 12 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 175:103 (3d ed.1996).

suit in "liquidated damages agreed upon by the parties." *Davis v. Safe Ins. Co.,* 120 W.Va. 505, 510, 199 S.E. 364, 367 (1938). Because the full amount of the policy is the basis upon which the insured paid premiums to the insurer, "the whole matter [is] one of contract, entered into voluntarily by the parties *sui juris,* [and] it would be difficult to sustain a challenge of the legality of the contract after a loss by fire has occurred and liability of the insurer has arisen." *Null v. Stuyvesant Ins. Co.,* 114 W.Va. 179, 171 S.E. 416, 418 (1933).

### 2. St. Paul All–Risk Policy

■ The St. Paul All–Risk Policy issued to Ames with Sayer Brothers as an additional insured provided coverage for losses to real and personal property, business interruption (including unusual or extra expense), rental value loss, royalties, accounts receivable, and leasehold interests. (Compl., Ex. 1, ¶ 7(a)-(h).) Coverage was provided for three years, from July 1, 1996 to July 1, 1999. The annual premium of six hundred fifty-six thousand dollars ($656,000) was to be adjusted based on an annual statement of "aggregate 100 percent values of buildings, structures, rental value, inventory and personal property . . . and of business interruption values covered hereunder." *Id.* ¶ 26. For the 1996 to 1997 property policy period, the Logan County Ames location (Sayer Brothers building) value was stated as one million twelve thousand dollars ($1,012,000).[7] The policy also provided, "The values declared to the Company at the inception of the policy are for premium purposes only and shall not limit the coverages provided by this policy." *Id.* ¶ 43. According to the

policy, the adjustment basis for building valuation is "replacement cost and, if not so replaced, at actual cash value on date of loss." *Id.* ¶ 11(d).

A noted treatise provides:

> In determining whether a policy is open or valued, the contract must be viewed in its entirety, to give effect to the mutual intentions of the parties at the time of its execution. And the policy must contain express language showing such an intent, before it will be deemed to be a valued policy. So a policy without the words "valued at" or other equivalent language is not valued.

*Appleman* § 3827.

The St. Paul policy is an open policy. No value is provided for the Sayer Brothers building as liquidated damages. The policy explicitly describes the schedule amount of one million twelve thousand dollars as *not* limiting coverage, while a valued policy provides a value explicitly designed to limit coverage. Rather, the St. Paul policy values every building covered at replacement cost or, if not replaced, actual cash value. Both methods of valuing the property are matters for proof, definitive of an open policy.

Sayer Brothers argues that although the policy is open, the "broad and ambiguous" language of the valued policy statute sets St. Paul's liability at "the whole amount of insurance stated in the policy," i.e., thirty-five million dollars.

### 3. Application of West Virginia Valued Policy Law to St. Paul All–Risk Insurance Policy

A federal court sitting in diversity has a duty to apply the operative state law as

---

7. The parties have provided only the 1996 to 1997 schedule to the Court. The schedule also provides values for each location for total equipment value, average inventory/retail, business interruption. The total of all values on which the policy premium was based was one billion, eight hundred sixty-six million, seventy-three thousand, five hundred seventy-nine dollars ($1,866,073,579).

would the highest court of the state in which the suit was brought. *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.,* 957 F.2d 1153, 1156 (4th Cir.1992). Where the highest state court has not ruled on a particular question, the district court must predict state law. *Id.* In doing so, a court may consider, among other things, canons of construction, restatements of the law and treatises regularly applied by the courts of the state and whose use for a particular purpose is approved by the state's highest court, recent pronouncements of general rules or policies by the state's highest court, or even that court's well-considered dicta. *Id.* (citations omitted).

The Supreme Court of Appeals of West Virginia has examined the state valued policy statute several times over the course of the past century. The West Virginia Court has only applied the valued policy law where the insurance is issued for a fixed amount, i.e., on valued policies, covering single buildings. In these cases, the state court found:

> The language of the act is broad and unambiguous. Under it, the insurance company shall be liable, in case of total loss, by fire or otherwise, as stated in the policy, *on any real estate insured, for the whole amount of insurance upon said real estate,* any provisions in the policy to the contrary notwithstanding. All provisions in a policy in conflict with a valued policy statute are void[.]

*Ritchie County Bank,* 47 S.E. at 100 (emphasis added)(finding insurer was liable for $1500 amount stated in policy on hotel building and policy provision for appointment of arbitrators to determine loss was ineffective); *Nicholas v. Granite State Fire Ins. Co.,* 125 W.Va. 349, 24 S.E.2d 280 (1943)(insurer liable for $2000 face value of

fire insurance policy on four room house and arbitration clause inapplicable); *Teter v. Franklin Fire Ins.,* 74 W.Va. 344, 82 S.E. 40 (1914)(insurer liable for $2000 policy amount on single building and arbitration clause immaterial). The West Virginia Court has never applied the valued policy law to an open insurance policy or to a policy like the St. Paul all-risk policy, covering multiple buildings for losses to real property, personal property, and several types of business income.[8]

■ Sayer Brothers contends that, the valued policy law being broad and unambiguous, there is no need for the Court to interpret it, but the statute must merely be applied as written. The Court discerns several problems with this proposal. First, the statute applies only to real property, and makes the insurer liable for "the whole amount of insurance stated in the policy, *upon such real property.*" W. Va. Code § 33–17–9 (emphasis added). Thus, the statute presumes that such an amount is stated in the policy or, in other words, that the policy is valued, not open.

As described above, the St. Paul all-risk policy places a thirty-five million dollar limit on single occurrence liability losses. Those losses include, both potentially and in this case actually, lost inventory, lost rent, lost business, and lost equipment, as well as the real property loss. "An amount stated in the policy as the amount of the insurance or the maximum amount of recovery does not, in itself, constitute or make the policy a valued one, so as to entitle the insured to recover the specified amount in case of an actual or constructive total loss." 12 *Couch on Insurance* § 175:98.

> The amount of an open policy of insurance ... is no evidence of the value of

---

8. The parties have not presented, nor has the Court located, a case from any jurisdiction in which a valued policy law has been applied to an open policy of insurance.

the property or the extent of the loss. Such a policy of insurance is not even prima facie evidence of the extent of the loss. The amount stated in a policy of this class is not a substantive measure of damages, but is only a limitation upon what might be otherwise recovered under the terms of the policy.

*Borden v. Gen. Ins. Co. of Am.*, 157 Neb. 98, 59 N.W.2d 141, 147 (1953); *see also* 6 *Appleman* § 3823 (amount of open policy "is no evidence of the amount or value of the property insured, prima facie or otherwise.").

Common sense and a straightforward reading of the St. Paul policy demonstrate that thirty-five million dollars was never intended by the parties as liquidated damages on the total loss of the single Sayer Brothers building in Wilkinson, West Virginia. In its discussion of valued policy law, the Supreme Court of Appeals of West Virginia frequently has emphasized the important relation between the value of the real estate insured and the premium paid. The judicially acknowledged purpose of the valued policy statute is to avoid insurance companies' over-valuation of structures for premium collection followed by contested or under-valuation when setting claims. The initial annual premium paid by Ames on the St. Paul policy was six hundred fifty-six thousand dollars ($656,000.00), paying for coverage against multiple risks for real property at hundreds of locations, personal property, and business income. The policy, however, explicitly delinks property values from potential losses ("The values declared to the Company ... are for premium purposes only and shall not limit the coverages provided by this policy." Policy ¶ 43.) The clause provides further evidence that this policy covering the Sayer Brothers' building is an open, not a valued policy.[9]

Sayer Brothers next contends that, although the thirty-five million dollar payout might provide them an unintended windfall, the West Virginia Court has accepted such outcomes as the necessary price of the valued policy law. In *Filiatreau*, Filiatreau contracted to buy a building for thirty-two thousand dollars ($32,000) and paid a thousand dollar ($1,000) downpayment. The form sales contract executed by the parties assigned the risk of loss by fire damage to seller until delivery of the deed. The next day Filiatreau applied for an Allstate fire insurance policy on the building, which was issued in the amount of $40,000 for one year. A week later the building burned. Filiatreau did not complete the purchase pursuant to the sales agreement. Instead, he purchased the damaged property for nine thousand dollars ($9,000) and spent twenty-five thousand dollars ($25,000) to repair it. Allstate argued Filiatreau should not receive the whole amount of insurance on the real estate, forty thousand dollars, because it would constitute a windfall. The court agreed the payout would be a windfall, but noted the purpose of the statute: "to prevent insurance companies over-valuing the insured structure for premium purposes ... and later contesting the value when there is a loss." *Filiatreau*, 178 W.Va. at 271, 358 S.E.2d at 832. "It was contemplated by the legislature that the insured would receive a windfall in certain cases and that the threat of this windfall would correct insurance companies' behavior." *Id.*

---

9. Were this a valued policy, the Court would be compelled under the valued policy law to find the declared value the Sayer Brothers' building of one million twelve thousand dollars ($1,012,000.00) provided for premium purposes to encompass St. Paul's total liability for this lost real estate.

Filiatreau's policy set premiums based on the forty-thousand-dollar value. The insurance company was not permitted to profit by refusing to pay Filiatreau the amount for which it insured the building and on which the premiums were calculated. Comparatively, had Ames or Sayer Brothers paid six hundred fifty-six thousand dollars ($656,000) to insure the Logan County building and valued it at thirty-five million dollars, the Court might agree, per West Virginia law, the thirty-five million dollar payout, windfall or not, could be required to deter over-valuation. Here, the premium amount relates to multiple buildings, personal property, business losses and multiple incidental risks. No one alleges the destroyed building was over-valued. Rather, the one million twelve thousand dollar valuation may have been an under-valuation. Sayer Brothers' complaint, based on an appraisal, demands seven million four hundred fifty-two thousand eight hundred thirty-four dollars ($7,452,834.00) compensation for this loss.

■ For these reasons, the Court predicts the Supreme Court of Appeals of West Virginia would not require the forced application of the valued policy law to what is clearly an open insurance policy, nor hold an insurer liable for its thirty-five million dollar maximum risk for one occurrence as liquidated damages for the total loss by fire of a single store building with a total reconstruction cost of approximately seven and a half million dollars.[10] Other courts have reached a similar result, finding valued policy laws inapplicable to builder's risk fire insurance policies because they provide no agreed-upon value in case of loss. *See St. Paul Fire &*

---

10. This result is further buttressed by the failure of the West Virginia statute to require all fire insurance policies on real estate to state an agreed value, that is, to be valued policies. Other states' valued policy laws do so require. For example, Delaware law requires every policy to carry this endorsement: "It is agreed between Insurer and Insured that the value of the real property insured is the sum of _____." *American Ins. Co. v. Iacom,* 89 A.2d 141 (Del.1952). Ohio requires by statute an examination by an insurance agent of any building or structure insured, a full description and "its insurable value fixed, by said agent." *Myers v. Cincinnati Ins. Co.,* 55 Ohio App.3d 34, 561 N.E.2d 1060 (1989)(citing Ohio Revised Code § 3929.25).

Rather, West Virginia law requires all fire insurance policies issued in the state to conform to all provisions of the New York standard (N.Y.S.) fire policy. *See* W. Va.Code § 33–17–2. Under standard provisions of the NYS policy, the insurer is "not liable beyond the actual cash value of the property at the time of loss and the loss or damage shall be ascertained or estimated according to such actual cash value." *Hinkle v. North River Ins. Co.,* 75 S.E. 54, 56, 70 W.Va. 681 (1912). Considering a fire policy insuring a wooden structure with a clause requiring arbitration as to value of restoration, the West Virginia Court found adoption of the general statute requiring the NYS form did not repeal by implication the specific valued policy law because there was between the two no "actual and destructive" inconsistency "of the character to cause the former special provision to lose all force." *Id.* Nevertheless, there is an inconsistency between a statute requiring the form of fire insurance policies be open, Section 33–17–2, and the valued policy statute, which presumes West Virginia fire insurance policies are valued.

Sayer Brothers contends the West Virginia Insurance Commission in an Informational Letter has placed a valued policy requirement on West Virginia fire insurance policies. W. Va. Informational Letter No. 10, Jan. 1980. That letter merely states "no fire insurance policy containing language not in accordance with the provisions of [§ 33–17–9, the valued policy statute] shall be approved by this Department for use within the State of West Virginia." The letter further *suggests* an amendatory endorsement: "In the case of total loss by fire or otherwise, as stated in the policy, *(the Company)* agrees to pay the whole amount stated in the policy declarations upon the real property insured[.]" Again, there is a presumption such an amount is stated. In the St. Paul policy, it is not.

*Marine Ins. Co. v. Griffin Construction Co.*, 338 Ark. 289, 993 S.W.2d 485, 489 (1999)(collecting cases).

The Court **FINDS** and **CONCLUDES** the valued policy law is inapplicable to the open all-risk insurance policy issued by St. Paul to provide, among many other items, fire insurance on Sayer Brothers' building. That policy will be construed as written and agreed-to between the parties to provide building valuation at the time of loss "at replacement cost and, if not so replaced, at actual cash value on date of loss."

Accordingly, Sayer Brothers' motion for partial summary judgment on Count I and on Defendant's counterclaim is **DENIED** and St. Paul's motion for summary judgment denying Sayer Brothers' thirty-five million dollar claim is **GRANTED**. St. Paul's failure to pay the thirty-five million dollar claim based on the valued policy law thus provide no basis for bad faith liability; however, St. Paul's settlement practices under the policy as written remain a potential source of liability.

### C. Sayer Brothers' Motion for Partial Summary Judgment on Counts II and III

Sayer Brothers moves for partial summary judgment as to liability as to Counts II and III, breach of duty of good faith and fair dealing and unfair trade practices. In support of the motion Plaintiff asserts St. Paul has (i) misrepresented pertinent policy provisions, (ii) failed to acknowledge and act reasonably promptly on communications from Plaintiff and its representatives, (iii) failed to adopt and implement reasonable standards for the prompt investigation of claims, (iv) refused to pay claims without conducting a reasonable investigation based upon all available information, and five further similar allegations, all of which raise questions of fact precluding summary judgment. Accordingly, partial summary judgment on Counts II and III is **DENIED**.

### D. Ames' Motion for Partial Summary Judgment on Compensation for Improvements and Betterments at the Sayer Brothers' Building

Count I of Ames' counterclaim against St. Paul and Count I of its cross-claim against Sayer Brothers assert that under the St. Paul all-risk insurance policy and the Ames/Sayer Brothers lease, Ames is entitled to any compensation for improvements and betterments to the destroyed building. Ames moved for partial summary judgment on these claims.

Although the ostensible bases of these claims are the contracts between the various parties, Ames' memorandum reveals its claim is actually based on factual contentions:

> [T]he lease provided for a deduction in rents (which Ames never received) to compensate Ames for such expenditures.... This failure of the Plaintiff to so compensate Ames for these expenditures may now be redressed by awarding Ames commensurate proceeds for the money that Ames expended from the insurance policy that Ames purchased to insure the store that Ames operated.

(Mem. of Fact and Law in Supp. of the Mot. for Partial Summ. J. at 7 (emphasis added).) Undergirding Ames' claim are numerous factual questions: whether rent deductions were due and owing, whether they were paid, whether other compensation was made, or was necessary, for the betterments and improvements. Summary judgment is inappropriate where questions of material fact are extant. Ames' motion for partial summary judgment on its entitlement to compensation for betterments and improvements is **DENIED**.

### E. Ames' Motion for Partial Summary Judgment on Release from its Lease with Sayer Brothers on Grounds of Impossibility and Sayer Brothers' Motion to Dismiss the Claim

Count II of Ames' Cross-claim against Sayer Brothers claims Ames should be released from its twenty-five (25) year lease because flood plain regulations require the building, if reconstructed, to be seven feet higher than its previous elevation. Under the regulations, the elevation cannot be gained by elevating the ground beneath the property, so it would have to be reconstructed on seven-foot stilts or supports. According to Ames, this makes it impossible to use the property as a department store and Ames therefore should be released from the lease. Ames moved for partial summary judgment on this count. Sayer Brothers moved to dismiss this count, a motion the Court considers first.

#### 1. Sayer Brothers' motion to dismiss Count II of Ames' cross-claim

■ Sayer Brothers moved to dismiss Count II of the cross-claim because Ames was joined in this action through St. Pauls' counterclaim for interpleader. Sayer Brothers relies on the Supreme Court finding in *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967), a statutory interpleader action: "interpleader was never intended ... to be an all-purpose 'bill of peace.'" *Id.* at 535, 87 S.Ct. 1199. Applying the *Tashire* rule to cross-claims in a statutory interpleader action, our Court of Appeals agreed, "[Interpleader] may not be used as the arena for resolution of claims of the defendants *inter se,* except insofar as they have adversity in their demands upon the fund." *Allstate Ins. Co. v. McNeill,* 382 F.2d 84, 87 (4th Cir.1967). "[C]ross-claims may be asserted to attack ... claims

against the common fund, but for no other purpose." *Id.*

Ames was joined in this action under *Rule* 22, which governs *rule* interpleader actions. Fed.R.Civ.P. 22. A noted treatise contrasting statutory with rule interpleader states, "When interpleader is brought under Rule 22, ... there is no difficulty in allowing the claimants to assert cross-claims against each other, as in any other civil action, assuming, of course, the requirements of Rule 13(g) are met." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1715 (3d ed.2001) (also discussing the rationale underlying the distinction). *Rule* 13(g), which generally governs cross-claims, allows "any claim ... arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein[.]" Fed.R.Civ.P. 13(g). Ames explains there is a factual nexus between the interpleader action and its cross-claim for release from the long-term lease because the question of reconstruction of the building is inextricably intertwined with the value of Sayer Brothers' claim against St. Paul. The Court agrees. When the *Rule* 13(g) test is met, "the cross-claim may be brought under the court's supplemental subject matter jurisdiction." Wright & Miller, *supra,* § 1715. Accordingly, Sayer Brothers' motion to dismiss Count II of Ames' cross-claim is **DENIED.**

#### 2. Ames' motion for partial summary judgment on cross-claim Count II

■ Ames moved for partial summary judgment on Cross-claim Count II seeking a declaratory judgment it has no further obligation under its lease agreement with Plaintiff, citing impossibility of performance. Ames submits a report by its expert, which states "rebuilding a discount department store as proposed on this site

would not be in the best interest of the retailer," and "the negative impact of re-tenanting under these circumstances [of elevating the building] would be most detrimental to their business." On this basis and because, Ames claims, the lease allows use of the building only as a department store, which is now impossible, it should be released from the lease.

■ The relevant portion of the lease states:

At the commencement of the Term, Tenant shall use the "Demised Premises" only for the operation of a department store, junior department store, self-service department store or discount store, and for no other purpose. Thereafter during the Term of this Lease or any renewal or extension thereof, Tenant may occupy the "Demised Premises" for any lawful purpose, except that if a food supermarket shall be constructed and operated in the area designated "Future Phase II Construction Area", Tenant may not occupy the "Demised Premises" as a food supermarket.

Lease ¶ 7. Ames' premise is mistaken: the building may be used for other purposes than a department store. Further the expert report provided does not demonstrate use of an elevated building, even used as a department store, is impossible, rather that it may be merely potentially unprofitable. "An unanticipated difficulty, not amounting to a supervening impossibility, does not furnish an excuse for non-performance of a contract." *O'Dell v. Criss & Shaver*, Syl. pt. 1, 123 W.Va. 290, 14 S.E.2d 767 (1941). Accordingly, Ames' motion for partial summary judgment on cross-claim Count II is **DENIED**.

### III. CONCLUSION

In summary, (1) Sayer Brothers' motion for partial summary judgment on Count 1,

its thirty-five million dollar claim for breach of contract, is **DENIED**; and St. Paul's counterclaim for declaratory judgment on the same issue is **GRANTED**; (2) St. Paul's motion for summary judgment denying Sayer Brothers' thirty-five million dollar claim and finding St. Paul not liable for bad faith for not paying thirty-five million dollars on the claim is **GRANTED** as qualified *ante;* (3) Sayer Brothers' motion for partial summary judgment as to liability alone on Counts 2 and 3 is **DENIED**; (4) Ames' motions for partial summary judgment (a) on its claims for compensation from St. Paul and (b) on a request for release from its lease with Sayer Brothers on grounds of impossibility are **DENIED**; and (5) Sayer Brothers' motion to dismiss Count II of Third-party (interpleader) Defendant Ames Merchandising Corporation's (Ames) Supplemental and Amended Cross–Claims is **DENIED**.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and publish it on the Court's website at http://www.wvsd.uscourts.gov.