# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2017 Term

_____

No. 16-1042

**FILED**
**April 26, 2017**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MOHAMMED ASHRAF, M.D.,**
**Plaintiff Below, Petitioner**

v.

**STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY,**
**and WELLS FARGO INSURANCE SERVICES**
**OF WEST VIRGINIA, INC.,**

**Defendants Below, Respondents**

_____

Certified Questions from the Circuit Court of Marion County
The Honorable Patrick N. Wilson, Judge
Civil Action No. 14-C-253

CERTIFIED QUESTIONS ANSWERED

_____

Submitted: April 18, 2017
Filed: April 26, 2017

**Chad C. Groome, Esq.**
**David A. Jividen, Esq.**
**Jividen Law Offices, PLLC**
**Wheeling, West Virginia**
**John R. Angotti, Esq.**
**Angotti & Straface, LC**
**Morgantown, West Virginia**
**Counsel for the Petitioner**

**Trevor K. Taylor, Esq.**
**Taylor Law Office**
**Morgantown, West Virginia**
**Counsel for Respondent State Auto**
**Property and Casualty Insurance Company**

**David P. Cook, Jr., Esq.**
**MacCorkle Lavender, PLLC**
**Charleston, West Virginia**
**Counsel for Respondent Wells Fargo**
**Insurance Services of West Virginia, Inc.**

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.  A vacancy provision in a fire insurance policy which provides that the insurer is allowed to reduce by 15% the stated amount of coverage payable for the total loss of a building destroyed by fire is enforceable, where the building has been vacant for more than 60 consecutive days prior to the loss. The provision does not conflict with this State's valued policy statute, *W.Va. Code*, 33-17-9 [2005], or this State's Standard Fire Policy adopted pursuant to *W.Va. Code*, 33-17-2 [1957].

2.  A Pollutant Cleanup and Removal provision in a fire insurance policy, which covers the expense of extracting pollutants from "land or water" at the insured premises, does not apply to asbestos testing and removal, where the asbestos removed is located within the fire-damaged structure.

**Justice Ketchum**:

The Circuit Court of Marion County has certified two questions regarding a commercial fire insurance policy issued to the petitioner, Mohammed Ashraf, M.D., ("Dr. Ashraf"), by the respondent, State Auto Property and Casualty Insurance Company ("State Auto"). Respondent Wells Fargo Insurance Services of West Virginia, Inc. ("Wells Fargo"), the named insurance agent on the policy, handled the sale of the policy issued to Dr. Ashraf.

The insured building, owned by Dr. Ashraf and his wife, was rendered a total loss by fire. Dr. Ashraf raised two coverage issues in a declaratory judgment action which resulted in the certified questions now before us. First, Dr. Ashraf challenged the reduction of the covered building loss by 15% pursuant to the vacancy provision included in the State Auto policy. Second, although Dr. Ashraf was afforded coverage for asbestos removed under the policy's debris removal coverage, he challenged State Auto's denial of coverage for asbestos removal under the policy's separate coverage for pollutant removal.

The certified questions and the circuit court's answers are as follows:

Where there is a covered total loss by fire under a fire insurance policy, may an insurer reduce the policy's limit of coverage for the insured premises by fifteen percent (15%) pursuant to a "vacancy" provision in the policy? The circuit court's answer: Yes.

1

Does a fire insurance policy that includes a "pollutant clean up and removal" provision that provides that the insurer will pay the insured's expense to extract pollutants from land or water, provide coverage in excess of the "debris removal" coverage afforded by the policy for the removal of asbestos contained in a fire-damaged or destroyed structure? The circuit court's answer: No.[1]

For the reasons stated, this Court concludes that the circuit court answered the certified questions correctly.

## I. Factual Background

The facts pertaining to the certified questions are not in dispute and are largely set forth in the circuit court's certification order.

In 1997, Dr. Ashraf and his wife purchased a building on Locust Avenue in the City of Fairmont, Marion County. The purchase took place at a sheriff's tax sale, and the amount paid was $91,000.00. After renovations were completed, Dr. Ashraf and his wife opened the building as an assisted living facility. The facility closed in 2006, and the building was vacant thereafter. Almost six years later, on October 29, 2012, a fire rendered the building a total loss.

---

[1] Wells Fargo states that it made no coverage decisions regarding Dr. Ashraf's claims under the State Auto policy and takes no position regarding the certified questions or the circuit court's answers.

The building was insured under a commercial fire insurance policy issued by State Auto. The named insured on the policy was Dr. Ashraf.

**A. The State Auto Policy**

The amount of insurance coverage on the building stated in the State Auto policy was $410,555.00. The policy provided adjustments for inflation, raising the stated total policy coverage limit to $420,228.35 on the building. In addition, the business personal property was covered under the State Auto policy in the amount of $21,632.00, which, according to Dr. Ashraf, provided, with adjustments, personal property coverage of $22,141.69. In addition to the building and personal property coverage, the State Auto policy provided separate coverages for debris removal and pollutant removal.

**B. Insurance Proceeds Paid by State Auto**

Dr. Ashraf reported the fire loss to State Auto. In response, State Auto told Dr. Ashraf that, if the building had been vacant for more than sixty consecutive days, the amount of coverage payable for the loss would be reduced by 15% pursuant to the policy's vacancy provision.

In the meantime, the City of Fairmont issued notices to Dr. Ashraf asserting the need to demolish the fire-destroyed building and that it would file a lien for debris removal if the

3

City demolished and removed the building. *See W.Va. Code*, 38-10E-1 [2010] (providing a lien in favor of a municipality against fire insurance proceeds for debris removal). Subsequently, Dr. Ashraf demolished and removed the fire-destroyed building, and no lien was filed.

In September 2013, State Auto sent Dr. Ashraf a check in the amount of $25,000.00. In an accompanying letter, State Auto informed Dr. Ashraf that the check was an advance, pending completion of the investigation of the claim. Thereafter, by letter dated January 28, 2014, State Auto sent Dr. Ashraf two checks: $332,194.10, representing coverage for the building loss, and $22,141.69, representing coverage for the business personal property loss.

The January 28, 2014, letter stated that the initial adjusted policy limit for the building of $420,228.35 was reduced by $63,034.25, a 15% reduction under the policy's vacancy provision. That reduction, with the previous $25,000.00 advance, resulted in $332,194.10 in coverage for the building. State Auto explained:

> In Dr. Ashraf's case, the building satisfies the definition to be considered vacant. In fact, this building appears to have been vacant for almost six years before the loss occurred. The loss at issue was a fire and that qualifies as a covered cause of loss. Because the building was vacant at the time of the loss and because this was a covered cause of loss, then State Auto is permitted, by the terms of the policy, to reduce the amount they would "otherwise pay" by 15%.

4

Finally, on March 3, 2014, State Auto, having verified the absence of a municipal lien, sent Dr. Ashraf a $10,000.00 check for debris removal. No coverage was extended for pollutant removal. Dr. Ashraf asserted that he incurred approximately $30,000.00 in demolition and debris removal costs as a result of the fire. He further asserted that he incurred an additional $4,925.00 in pollutant removal costs for the removal and testing of asbestos.

## II. Procedural Background

On August 28, 2014, Dr. Ashraf filed a declaratory judgment action in the Circuit Court of Marion County. The complaint consisted of five counts, the first two of which resulted in the certified questions. In count I, designated "Stated Value of Policy," Dr. Ashraf alleged entitlement to the full policy limit for building coverage in the amount of $420,228.35. Dr. Ashraf alleged that State Auto improperly reduced that amount by 15% under the policy's vacancy provision. In count II, designated "Coverage for Pollutant Removal," Dr. Ashraf alleged entitlement to the costs he incurred for the removal and testing of asbestos under the policy's Pollutant Cleanup and Removal coverage. Dr. Ashraf alleged that asbestos is a pollutant and, therefore, a subject of coverage under the State Auto policy in addition to coverage for debris removal.[2]

---

[2] Counts III and IV alleged unfair claim settlement practices, bad faith, and the tort of outrage against State Auto, and count V alleged negligence against Wells Fargo.

5

In January 2015, Dr. Ashraf and State Auto filed motions for summary judgment. Regarding count I, Dr. Ashraf asserted that the policy limit for the building coverage should not have been reduced by 15% because the State Auto policy was a "valued policy" under *W.Va. Code*, 33-17-9 [2005], which requires that the face value of the policy be paid in the event of a total loss by fire. *W.Va. Code*, 33-17-9 [2005], provides in relevant part: "All insurers providing fire insurance on real property in West Virginia shall be liable, in case of total loss by fire or otherwise, as stated in the policy, for the whole amount of insurance stated in the policy, upon such real property."[3]

In conjunction with the statute, Dr. Ashraf cited an included endorsement in the State Auto policy entitled "West Virginia Changes," section C.1. of which stated: "In case of total loss by fire or other covered cause of loss, we will pay the Limit of Insurance stated in this

---

[3] *W.Va. Code*, 33-17-9 [2005], provides in its entirety:

All insurers providing fire insurance on real property in West Virginia shall be liable, in case of total loss by fire or otherwise, as stated in the policy, for the whole amount of insurance stated in the policy, upon such real property; and in case of partial loss by fire or otherwise, as aforesaid, of the real property insured, the liability shall be for the total amount of the partial loss, not to exceed the whole amount of insurance upon the real property as stated in the policy. This section does not apply where such insurance has been procured from two or more insurers covering the same interest in such real property.

6

Coverage Part applicable to the real property."[4]  According to Dr. Ashraf, the statute and the "West Virginia Changes" section of the policy nullified the 15% vacancy reduction.

Regarding count II, Dr. Ashraf asserted that he is entitled to summary judgment because asbestos, a harmful irritant commonly abated in the building demolition process, should be included within the meaning of "pollutant" under the policy.  Accordingly, Dr. Ashraf argued that any ambiguity as to the scope of coverage for pollutant removal must be strictly construed against State Auto.

State Auto's motion for summary judgment also concerned counts I and II of the complaint.  As to count I, State Auto acknowledged that the policy issued to Dr. Ashraf was a valued policy under *W.Va. Code*, 33-17-9 [2005].  State Auto did not contest the value of the building or its total loss by fire.  However, State Auto asserted that a valued policy does not operate to nullify conditions and exclusions included in such a policy in anticipation of acts which increase the risk to the covered property.  According to State Auto, the vacancy

---

[4] Dr. Ashraf states that the "West Virginia Changes" provision was included in policies like the State Auto policy as the result of the West Virginia Insurance Commissioner's Informational Letter No. 10, issued in January 1980, entitled "Valued Policy Law."  Referring to *W.Va. Code*, 33-17-9, the Informational Letter states: "In the case of total loss by fire or otherwise, as stated in the policy, (the Company) agrees to pay the whole amount stated in the policy declarations upon the real property insured."

We note that the former *W.Va. Code*, 33-17-9 [1957], effective in 1980, was substantially the same as *W.Va. Code*, 33-17-9 [2005], currently in effect.

7

provision, allowing the 15% reduction, is such an anticipatory limitation, especially operable

here where the building was vacant for almost six years prior to the October 29, 2012, fire.

In addition, State Auto relies on its West Virginia Standard Fire Policy, the provisions

of which were adopted in *W.Va. Code*, 33-17-2 [1957].[5]  Under the Standard Fire Policy, no

coverage need be provided where the structure is vacant beyond a period of sixty consecutive

days.  State Auto thus suggested that the policy issued to  Dr. Ashraf was more favorable

than the Standard Fire Policy because it resulted in a 15% reduction of the limit of building

coverage, rather than a complete denial of the claim.

---

[5] The Standard Fire Policy Provisions were incorporated in the policy pursuant to *W.Va. Code*, 33-17-2 [1957], and constituted the New York-West Virginia Standard Fire Policy cited by State Auto in its motion for summary judgment.  *W.Va. Code*, 33-17-2 [1957], provides in part:

> No policy of fire insurance covering property located in West Virginia shall be made, issued or delivered unless it conforms as to all provisions and the sequence thereof with the basic policy commonly known as the New York standard fire policy, edition of one thousand nine hundred forty-three, *which is designated as the West Virginia standard fire policy*; except that with regard to multiple line coverages providing casualty insurance combined with fire insurance this section shall not apply if the policy contains, with respect to the fire portion thereof, language at least as favorable to the insured as the applicable portions of the standard fire policy and such multiple line policy has been approved by the commissioner.

(emphasis added).

As to count II, State Auto noted that coverage for pollutant removal was limited to an insured's expense for extracting pollutants from "land or water." Denying that such was the case here, State Auto indicated that the asbestos was confined to the components of the building and was required by the demolition contractor to be abated prior to the removal of the remnants of the building.

The motions for summary judgment were held in abeyance, and on November 3, 2016, the circuit court entered an order certifying two questions to this Court. The circuit court answered both questions in favor of State Auto. On the first question, the circuit court associated the vacancy provision with "risk of loss," rather than the value of the building. Consequently, the circuit court concluded that the vacancy provision was consistent with the valued policy statute and West Virginia's Standard Fire Policy and that the 15% reduction was proper under the terms of the State Auto policy.

On the second question relating to coverage for pollutant removal, the circuit court concluded that, under the plain language of the policy, the phrase "land or water" referred to the natural surroundings of the building. Therefore, the denial of coverage, in excess of the coverage afforded by the debris removal provision, was proper.

## III. Standard of Review

The procedure and standard of review to be followed in certified question cases are well-established. Pursuant to *W.Va. Code*, 58-5-2 [1998], a circuit court may, in its discretion, certify a question of law to this Court. The question is processed by this Court under Rule 17 of the Rules of Appellate Procedure. As to the merits of the circuit court's resolution of the question, we held in syllabus point 1 of *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996): "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." *Accord* syl. pt. 1, *Master Mechanical Insulation, Inc. v. Simmons*, 232 W.Va. 581, 753 S.E.2d 79 (2013); syl. pt. 1, *Univ. Commons Riverside HOA v. Univ. Commons Morgantown*, 230 W.Va. 589, 741 S.E.2d 613 (2013).

## IV. Discussion

### Certified Question 1

The first question asks: Where there is a covered total loss by fire under a fire insurance policy, may an insurer reduce the policy's stated amount of coverage for the insured premises by 15% pursuant to a "vacancy" provision in the policy?

It is undisputed that the State Auto policy was a valued policy under *W.Va. Code*, 33-17-9 [2005]. The policy included the West Virginia Changes endorsement, derivative from

10

the statute, which stated that, in case of total loss by fire or otherwise, "we will pay the Limit of Insurance stated in this Coverage Part applicable to the real property." Thus, Dr. Ashraf contends that the policy's stated amount of coverage for the building should not have been subject to the 15% reduction.

The State Auto policy included two vacancy provisions. The first was set forth in the policy's "Standard Fire Policy Provisions" for commercial property:

> Conditions suspending or restricting insurance. *Unless otherwise provided in writing added hereto* this Company shall not be liable for loss occurring
> (a) while the hazard is increased by any means within the control or knowledge of the insured; or
> (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; or
> (c) as a result of explosion or riot, unless fire ensues, and in that event for loss by fire only.

(emphasis added).

*See* Vol. 5, Jeffrey E. Thomas, *New Appleman on Insurance Law Library Edition* § 43.03[10][c] (LexisNexis 2016) (The Standard Fire Insurance Policy "suspends all coverage during periods of vacancy.")

11

Although the Standard policy provision allowed the denial of coverage if there is a vacancy in excess of sixty days, the policy had a second vacancy provision, under "Loss Conditions," which stated that, if a building is vacant for more than sixty consecutive days, State Auto will reduce the coverage amount payable by 15%. That section of the policy provided as follows:

b. Vacancy Provisions
   If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:
   (1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
       (a) Vandalism;
       (b) Sprinkler leakage, unless you have protected the system against freezing;
       (c) Building glass breakage;
       (d) Water damage;
       (e) Theft; or
       (f) Attempted theft.
   (2) With respect to Covered Causes of Loss other than those listed in b.(1)(a) through b.(1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

Although State Auto initially cited vandalism as a potential ground under the policy for a complete denial of Dr. Ashraf's claim, State Auto nevertheless provided coverage and applied the 15% vacancy reduction. It is undisputed that, following the closure of the assisted living facility in 2006, the building remained vacant for almost six years.

12

The valued policy statute has been in operation in West Virginia for many years. In syllabus point 4 of *Ritchie County Bank v. Fireman's Ins. Co.*, 55 W.Va. 261, 47 S.E. 94 (1904), this Court held: "Chapter 33 of the Acts of the Legislature of 1899 [the valued policy statute, currently *W.Va. Code*, 33-17-9], renders fire insurance companies, doing business in this State, liable in case of total loss by fire or otherwise, as stated in the policy, on any real estate insured by them for the whole amount of insurance stated in the policy of insurance, upon said real estate." In so holding, this Court adopted the language of the Court of Appeals of Kentucky in *Caledonian Ins. Co. v. Cooke*, 101 Ky. 412, 41 S.W. 279 (1897), as explanatory of the legislative intent concerning this State's valued policy statute. In *Caledonian Ins. Co.*, the Kentucky court stated:

> It is perfectly evident that the legislature intended to remedy the evil of overvaluation in insurance, and, in doing so, followed the example of many other states of the Union, by making the insurer responsible for overvaluation; and, to do this, the remedy was and is to compel the insurer to pay the full amount (in case of total loss) for which they write their policy, and on which the premium is calculated and collected[.]

101 Ky. at 418, 41 S.W. at 280; cited in *Ritchie County Bank*, 55 W.Va. at 277, 47 S.E. at 101. As this Court similarly noted in *Filiatreau v. Allstate Ins. Co.*, 178 W.Va. 268, 271, 358 S.E.2d 829, 832 (1987), the purpose of the valued policy statute is to "prevent insurance companies from over-valuing the insured structure for premium purposes, thereby allowing them to collect an excess premium and later contest the value when there is a loss."

13

Nevertheless, we further noted in *Filiatreau* that "there are situations where the valuation set forth in the policy will not be binding," as in the case of "fraud, misrepresentation, or collusion." 178 W.Va. at 271, 358 S.E.2d at 832.[6]

A reduction of coverage payment pursuant to a vacancy provision has never been addressed by this Court in the context of the valued policy statute. Various cases cited by the parties establish that the valued policy statute was not repealed by the subsequent adoption of the New York Standard Fire Policy and that, where the fire loss is total, the insurer has no right to contest the amount of the loss. As such, those cases are not dispositive. *See Nicholas v. Granite State Fire Ins. Co.*, 125 W.Va. 349, 24 S.E.2d 280 (1943) (The Standard Fire Policy does not supersede the valued policy act.); *Null v. Stuyvesant Ins. Co.*, 114 W.Va. 179, 171 S.E. 416 (1933) (Any conflict between the New York Standard Fire Policy and the valued policy statute should be resolved in favor of the valued policy statute); *Teter v. Franklin Fire Ins. Co.*, 74 W.Va. 344, 82 S.E. 40 (1914) (If the loss is total, the valued policy statute renders adjustment of the loss unnecessary.); *Hinkle v. North River Ins. Co.*, 70 W.Va. 681, 75 S.E. 54 (1912) (Where the loss is total, the insurance company has no right to dispute

---

[6] *See* C. T. Drechsier, Annotation, *Applicability of Valued Policy Statute to Partial Fire Loss*, 36 A.L.R.2d 619 (1954) ("To avoid overinsurance and to overcome the haggling over the measure of recovery so typical in case of fire loss many state legislatures have realistically enacted specific laws, frequently termed 'valued policy statutes,' which expressly deal with valued insurance policies." In the case of total loss, the valuation in the policy is conclusive, "at least in the absence of fraud or mistake.").

14

the amount of the loss, policy provisions and the New York Standard Fire Policy notwithstanding.).[7]

State Auto does not contest the value of the building or its total loss by fire. Moreover, the certified question before us does not concern whether Dr. Ashraf's building was overinsured. Under the Standard Fire Policy, included in the State Auto policy, a vacancy beyond a period of sixty days authorized a complete denial of liability for the loss. However, the vacancy provision allowing the 15% reduction is not located in the Standard Fire Policy language. The 15% vacancy provision is in another section of the policy and allowed the 15% reduction of the amount of insurance payable for the total loss of Dr. Ashraf's building by fire under the facts in this case.

The vacancy reduction provision before this Court is, therefore, favorable to the insured in comparison to the Standard Fire Policy Provisions of the State Auto policy and the Standard Fire Policy adopted pursuant to *W.Va. Code*, 33-17-2 [1957]. Moreover, the 15%

---

[7] *See also Niagara Fire Ins. Co. of N. Y. v. Raleigh Hardware, Co*., 62 F.2d 705 (4th Cir. 1933) (The West Virginia valued policy statute, enacted to avoid litigation over the amount of damages sustained and to prevent the evils arising from overinsurance, was not repealed by legislation adopting a uniform fire insurance policy.); *Sayer Brothers, Inc. v. St. Paul Fire & Marine Ins. Co*., 150 F.Supp.2d 907 (S.D. W.Va. 2001) (The purpose of the West Virginia valued policy law is to prevent over-valuing the structure for premium purposes, and it relieves the insured from proving the full value of the structure when total loss occurs.).

reduction applied to the stated value of the building in the policy does not subject the parties to a factual dispute over valuation, a dispute intended to be avoided by the adoption of the valued policy statute. Just as the policy's inflation adjustment of the stated value of the property results in a liquidated amount, so does the 15% reduction. Moreover, the 15% reduction remains the same whether the vacancy is just over sixty consecutive days before the loss occurs or, as in the case here, where the building remained vacant for a number of years.

Consequently, the cases cited by Dr. Ashraf which state that the valued policy statute takes priority over the West Virginia Standard Fire Policy are not controlling. Furthermore, the vacancy reduction provision does not offend the valued policy statute or the statute's derivative West Virginia Changes endorsement included in the State Auto policy. The 15% reduction is an anticipatory limitation regarding the risk to a structure from extended vacancy. The reduction was clearly operable here where the building was vacant for almost six years prior to the October 29, 2012, fire. *See Nathan v. Saint Paul Mut. Ins. Co*., 68 N.W.2d 385 (Minn. 1955) (Under the Minnesota valued policy statute, recovery on the policy may be precluded where there is a change in the condition of the property after the policy is issued which increases the risk without the consent of the insurer.).

16

Accordingly, this Court holds that a vacancy provision in a fire insurance policy which provides that the insurer is allowed to reduce by 15% the stated amount of coverage payable for the total loss of a building destroyed by fire is enforceable, where the building has been vacant for more than 60 consecutive days prior to the loss. The provision does not conflict with this State's valued policy statute, *W.Va. Code*, 33-17-9 [2005], or this State's Standard Fire Policy adopted pursuant to *W.Va. Code*, 33-17-2 [1957]. The answer of the circuit court upholding the enforcement of the 15% reduction is correct.

## Certified Question 2

In addition to the building and business personal property coverage, the State Auto policy provided separate coverages for debris removal and pollutant removal. Although State Auto sent Dr. Ashraf a $10,000.00 check for debris removal, no insurance payment was extended for pollutant removal. Dr. Ashraf states that he incurred $4,925.00 in pollutant removal costs for the removal and testing of asbestos following the fire. Thus, the certified question asks whether the policy's "pollutant clean up and removal" provision provides coverage, in excess of the debris coverage, for Dr. Ashraf's expense of removing and testing the asbestos in the fire-destroyed building. The circuit court answered the question in favor of State Auto.

17

The State Auto policy provided separate coverage for pollutant removal in the amount of $10,000.00. Section d. under "Additional Coverages" stated:

> Pollutant Clean Up And Removal
> We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. * * *
> This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants." But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

"Pollutants" is defined in the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

Dr. Ashraf contends that removal costs were incurred in extracting the asbestos from "land or water" following the fire. He asserts that, inasmuch as the building was part of the land, the failure to extract a pollutant, including asbestos in the building, virtually guarantees that the pollutant will be released onto the site of the insured property. Asserting that any ambiguity in the provision should be construed in favor of coverage, Dr. Ashraf argues that State Auto was required to provide pollutant removal coverage in addition to the coverage provided for debris removal. *See* syl. pt. 4, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987) ("It is well settled law in West Virginia that ambiguous

18

terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured.").

However, the State Auto policy is plainly clear that to obtain pollutant clean up and removal coverage, there must have been the discharge, dispersal, seepage, migration, release or escape of the pollutant into the land or water, caused by or resulting from a covered cause of loss, and the pollutant then extracted from the land or water.

State Auto contends that an extraction of asbestos from "land or water" was not the case here and the additional coverage was not warranted, since the asbestos was confined to the components of the building and was required by the demolition contractor to be abated before the building's removal.[8] Answering the certified question in favor of State Auto, the circuit court concluded that under the plain language of the policy the phrase "land or water" referred to the natural surroundings of the building, and, therefore, the denial of additional coverage as to Dr. Ashraf's claim was proper.

_____

[8] State Auto maintained before the circuit court that Dr. Ashraf's evidence detailed the removal, transport and legal disposal of asbestos relating solely to certain building materials. The removal was required to allow for the building's demolition. According to State Auto, abatement or remedial work concerning "land or water" was not necessary. During his deposition, Dr. Ashraf acknowledged that the asbestos had to be removed prior to demolition.

The circuit court cited the decision of the United States District Court for the Southern District of California in *Ruffin Road Venture Lot IV v. Travelers Property Casualty Co. of Am.*, 2011 WL 2463291 (S.D. Cal. June 20, 2011). In *Ruffin Road*, the air conditioning system in the insured's office building was damaged when a water pipe burst, causing mud, rocks and other debris to circulate through the system. The insured filed an insurance claim for the cost of removing those substances from the air conditioning system and cited the policy's Pollutant Cleanup and Removal provision. That provision, similar to the provision before this Court, stated that the insurer would pay the insured's necessary and reasonable expense "to extract 'pollutants' from land or water at the described premises, if the discharge, dispersal, seepage, migration, release or escape of the 'pollutants' is caused by or results from a 'specified cause of loss' which occurs: (a) At the described premises; (b) To Covered Property; and (c) During the policy period."

The District Court, in *Ruffin*, concluded that the Pollutant Cleanup and Removal provision did not apply in the circumstances of the insured's claim. First, noting that the claim was limited to "the contamination of an internal, wholly contained air conditioning system," the District Court determined that the mud, rocks and other debris did not constitute pollutants within the meaning of the Cleanup and Removal provision. Second, the District Court concluded that the insured's claim failed under the provision's "land or water" component. The District Court stated: "The ordinary and most reasonable reading of this

20

language is that the provision is targeted at pollutants that have contaminated the natural surroundings of the insured property - for example, chemicals that have leached into the soil, or waste that has been discharged into a nearby stream." In *Ruffin*, the District Court emphasized that the water within the damaged air conditioning system was "not part of or in contact with any naturally occurring body of water."

In the current matter, the Pollutant Cleanup and Removal provision is found in the section of the State Auto policy entitled "Building and Personal Property Coverage Form." Subsection A.2.h. thereof states that covered property does not include: "Land (including land on which the property is located), water, growing crops or lawns." Thus, the plain language of the policy distinguishes "land" and "water" for which coverage is not extended, unless and until they have been affected by a pollutant within the meaning of State Auto's Pollutant Cleanup and Removal provision.[9] Nothing in the record before us shows that land or water in the context of that provision were affected by the asbestos found in this case in certain materials within the damaged building.

---

[9] *See* syl., *Keffer v. Prudential Ins. Co. of Am.*, 153 W.Va. 813, 172 S.E.2d 714 (1970) ("Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."). *Accord* syl. pt. 5, *Am. Nat'l. Property and Casualty Co. v. Clendenen*, 238 W.Va. 249, 793 S.E.2d 899 (2016).

21

The circuit court's reliance on the opinion in *Ruffin* was, therefore, warranted, and it correctly concluded that State Auto should not be required to provide pollutant removal coverage in addition to the coverage it provided for debris removal. This Court holds that a Pollutant Cleanup and Removal provision in a fire insurance policy, which covers the expense of extracting pollutants from "land or water" at the insured premises, does not apply to asbestos testing and removal, where the asbestos removed is located within the fire-damaged structure.

Accordingly, the answer of the circuit court to the second certified question is correct.

## V. Conclusion

The certified questions having been answered, this matter is remanded to the Circuit Court of Marion County for further proceedings.

Certified Questions Answered.