# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Mohammed Ashraf, M.D.,**
**Plaintiff Below, Petitioner**

**vs) No. 18-0382** (Marion County 14-C-253)

**State Auto Property and**
**Casualty Insurance Company,**
**Defendant Below, Respondent**

**FILED**

**May 20, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mohammed Ashraf, M.D., by counsel David A. Jividen, Chad C. Groome, and John R. Angotti, appeals the April 24, 2018, amended order of the Circuit Court of Marion County granting the motion for summary judgment filed by Respondent State Auto Property and Casualty Company ("State Auto") and denying petitioner's motion for partial summary judgment on petitioner's claim that State Auto waived the application of the vacancy provision set forth in an insurance policy that petitioner purchased to cover certain real property. State Auto, by counsel Trevor K. Taylor, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner is a medical doctor who also invests in real estate. He and his wife purchased a certain building in Fairmont, West Virginia, in 1997 at a tax sale. The building had previously been converted from a private home to an assisted living facility and petitioner and his wife continued to operate it as such until 2006, when they closed the business. Thereafter, petitioner's efforts to rent out the building did not materialize and the building became vacant.

In 2009, the building was broken into and vandalized. At the time, the building was covered by an insurance policy by State Auto.[1] The State Auto policy provided, in part, as follows:

   **A. Coverage**

---

[1] The policy was issued through Wells Fargo Insurance Services of West Virginia, a defendant below, but which is not a party to the instant appeal.

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Loss.

. . . .

### E. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

. . . .

#### 1. Vacancy

. . . .

##### b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs

    (1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

        (a) Vandalism;

        (b) Sprinkler leakage, unless you have protected the system against freezing;

        (c) Building glass breakage;

        (d) Water damage;

        (e) Theft; or

        (f) Attempted theft.

    (2) With Respect to Covered Causes of Loss other than those listed in b.(1)(a) through b.(1)(f) above, we will reduce the amount we should otherwise pay for the loss or damage by 15%.

Petitioner reported the incident to State Auto, which investigated and learned that the building was vacant and had been vacant since 2006. State Auto denied coverage, advising petitioner in a June 26, 2009, letter that the claim was for a clear uncovered loss under subpart (1)(a) of the vacancy provision in the policy: vandalism. Following the 2009 loss, State Auto continued to reissue, and petitioner continued to repurchase, the policy for the vacant property. Over the years, the insurance premium and the amount of coverage on the vacant structure both increased.

By 2012, the insurance policy on the still-vacant building consisted of a property value of $410,555.00, with a $500.00 deductible and a 4% inflation guard provision. Thus, the policy provided a total policy coverage limit of $420,228.35.[2]

On October 29, 2012, the building was damaged by fire and was a total loss. Petitioner timely reported the fire loss and, upon investigation, State Auto determined that the fire was caused by an incendiary act. By letter dated November 15, 2012, State Auto advised petitioner that it was proceeding under a reservation of rights regarding the fire loss claim because, inter alia, the subject property was alleged to be vacant and, therefore, subject to cancellation or a 15% reduction of the

---

[2] The policy also provided for demolition and/or debris removal and also for pollutant removal. *See infra*.

2

policy limit. State Auto canceled the subject policy on November 21, 2012. On December 18, 2012, the subject property sustained a second fire.

Ultimately, on January 28, 2014, State Auto determined that a fire loss qualified as a covered cause of loss and paid petitioner for a total loss of the building. However, because the building was "vacant" at the time of the fire, pursuant to the policy's vacancy provision, State Auto reduced the amount it would "otherwise pay" by 15%. State Auto further explained that the 4% inflation guard was triggered and was added to the amount of the policy payment due to petitioner. Petitioner received a check in the amount of $322,194.10 for the covered loss, which included a $25,000.00 reduction for money State Auto advanced to petitioner in "good faith" while it investigated the claim; petitioner received a second check for $22,141.69 for personal property loss, which amount also reflected the 15% vacancy provision reduction and 4% inflation guard; and a third check was issued for $10,000.00 for debris removal coverage. Though petitioner asserted that he incurred $4,925.00 in costs for the removal and testing of asbestos, no coverage was extended for pollutant removal under the policy.

On August 28, 2014, petitioner filed a declaratory judgment action as to the stated value policy, arguing that the policy's 15% coverage reduction provision violates West Virginia Code § 37-17-9 (Count I), and, as to coverage for pollutant removal, arguing that he is entitled to coverage for asbestos removal (Count II). Petitioner also filed claims for violations of the Unfair Trade Practices Act, West Virginia Code § 33-11-4(9), and first-party bad faith (Count III), the tort of outrage (Count IV), and negligence on the part of Wells Fargo Insurance Services of West Virginia ("Wells Fargo") (Count V).

Defendant Wells Fargo filed an answer. State Auto also filed an answer and a motion to bifurcate and stay petitioner's bad faith and other claims pending a ruling on the declaratory judgment issues (Counts I and II). Petitioner filed a response to the motion, objecting to the same. Following a December 2, 2014, hearing, the circuit court granted the motion to bifurcate and stay discovery related to the bad faith claims for ninety days and ordered that discovery could proceed on the coverage issues.

Petitioner and State Auto thereafter filed cross-motions for summary judgment on Counts I and II. Following a hearing on December 22, 2015, questions were certified to this Court. Relevant to this appeal, we held that a vacancy provision that provides that the insurer may

> reduce by 15% the stated amount of coverage payable for a total loss of the building destroyed by fire is enforceable, where the building has been vacant for more than 60 consecutive days prior to the loss. The provision does not conflict with this State's valued policy statute, *W.Va. Code*, 33-17-9 [2005], or this State's Standard Fire Policy adopted pursuant to *W.Va. Code*, 33-17-2[1957].

Syl. Pt. 1, in part, *Ashraf v. State Auto Prop. & Cas. Ins. Co.*, 239 W. Va. 119, 799 S.E.2d 550

(2017).[3]

Following remand to the circuit court, State Auto filed a motion for entry of an order granting its previously filed motion for summary judgment. Petitioner filed a response in opposition on the ground that State Auto had waived the application of the vacancy provision following the 2009 vandalism claim. State Auto submitted a reply.

By amended order entered on April 24, 2018, the circuit court granted State Auto's motion for summary judgment and denied petitioner's partial motion for summary judgment on Count I (relating to the vacancy provision) and Count II (relating to pollutant removal) of petitioner's complaint. Petitioner now appeals the court's summary judgment ruling as to Count I only.

This Court reviews the circuit court's summary judgment order de novo. *See* Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994). Further, in syllabus point two of *Painter*, this Court held that

> "'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

Finally,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, syl. pt. 4. This Court will consider petitioner's appeal under this standard.

At issue here is whether State Auto waived the application of the policy's provision that reduced coverage on the building by fifteen percent because the building was vacant at the time of the fire. "'To effect a waiver, there must be evidence which demonstrates that a party has intentionally relinquished a known right.'" Syl. Pt. 1, in part, *Potesta v. U.S. Fid. & Guar. Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998) (quoting Syl. Pt. 2, in part, *Ara v. Erie Ins. Co.*, 182 W. Va. 266, 387 S.E.2d 320 (1989)). Furthermore,

---

[3] The second certified question involved whether the policy covered asbestos removal under the pollutant removal provision. This Court held that "[a] Pollutant Cleanup and Removal provision in a fire insurance policy, which covers the expense of extracting pollutants from 'land or water' at the insured premises, does not apply to asbestos testing and removal, where the asbestos removed is located within the fire-damaged structure." *Ashraf*, 239 W. Va. at 120, 799 S.E.2d at 551, syl. pt. 2. The pollutant removal provision is not at issue in this appeal.

4

[t]here is no requirement that an insured have detrimentally relied upon an insurer's previously stated reason(s) for denying coverage in order to assert *waiver* to prevent the insurer, in subsequent litigation, from asserting other, previously unarticulated reasons for denying coverage. Rather, the insured must show, by clear and convincing evidence where waiver is implied, that the insurer intentionally and knowingly waived the previously unarticulated reason(s) for denying coverage.

*Potesta*, 202 W. Va. at 310, 504 S.E.2d at 137, syl. pt. 3. (Emphasis in original).

Petitioner argues that State Auto impliedly waived the vacancy provision by continuing to renew the insurance policy after it became aware, at the time of the 2009 vandalism claim, that the building was vacant. In support of this argument, petitioner argues that syllabus point two of *McKinney v. Providence Washington Insurance Co.*, 144 W. Va. 559, 109 S.E.2d 480 (1959), applies:

When a duly authorized agent of the insurer knows at the time the policy is issued that the building is vacant, and it was later destroyed by fire while vacant but had been occupied between the time of the issuance of the policy and the time of the loss, the provision of the policy that the insurer shall not be liable if the building is vacant or unoccupied for a definite number of days is waived by the insurer.

*See also Kimball Ice Co. v. Springfield Fire & Marine Ins. Co.*, 100 W. Va. 728, 732, 132 S.E. 714, 715 (1926) ("Issuance and delivery of the policy, with knowledge by the company, or its agent, of existing facts as to vacancy or nonoccupancy, or that the building will be unoccupied for more than the limited or prescribed period, operates as a waiver or estoppel, preventing the company from claiming a forfeiture by reason of such facts.") Petitioner argues that, under *McKinney* and *Kimball Ice*, State Auto's reissuance of insurance coverage "with knowledge of a vacancy waives the application of [the] vacancy clause in the insurance contract." He contends further that waiver does not apply only in cases where the insurer knew about a vacancy at the time it first issued the policy. Relying on cases from other jurisdictions, petitioner argues that, where an insurer is or becomes aware of a property's vacant status, the doctrine of waiver applies to initial issuances and reissuances of insurance equally. *See Am. Fire & Cas. Co. v. Eastham*, 185 F.2d 729 (5th Cir. 1950); *Marketfare Canal, LLC v. United Fire & Cas. Co.*, 594 F.Supp.2d 724 (E.D. La. 2009); *Travelers Fire Ins. Co. v. Bank of New Albany*, 146 So.2d 351 (Miss. 1962). Finally, petitioner argues that the circuit court erred in concluding that waiver does not apply because petitioner is sophisticated in insurance matters and/or should have cured the vacancy.

We find no error. This Court has long held that "'[w]here the provisions of an insurance policy contract are clear and unambiguous . . . full effect will be given to the plain meaning intended.' Syl., [in part,] *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970)." Syl. Pt. 5, in part, *American Nat'l Prop. & Cas. Co. v. Clendenen*, 238 W. Va. 249, 793 S.E.2d 899 (2016). In 2009, petitioner reported a loss to State Auto because the subject building had been vandalized. Upon learning that the building had been vacant for more than sixty consecutive days, State Auto invoked the clear and unambiguous language of the policy's vacancy provision, which

5

enumerated six reasons for denial of coverage, including vandalism.[4] State Auto expressly advised petitioner of the same, in writing, and denied coverage. When petitioner's still-vacant building sustained a fire loss (a covered loss under the policy) in 2012, State Auto again invoked the clear and unambiguous language of the vacancy provision by "reduc[ing] the amount [it] should otherwise pay for the loss or damage by 15%."

We find the instant case to be distinguishable from *McKinney* and *Kimball Ice*. In *McKinney*, the insurer invoked the applicable policy's vacancy provision, of which the insured was previously unaware. In this case, petitioner does not dispute that he was advised of the vacancy provision when his 2009 vandalism claim was denied. We recognize that the written notice denying the vandalism claim did not specifically quote from that portion of the vacancy provision providing for a reduction in coverage for covered causes of loss because that provision was inapplicable to the claim. However, the notice expressly referenced "Section E. Loss Conditions[,]" which starts on page 9 of 14[,]" and included the coverage reduction provision now at issue. "A party to a contract has a duty to read the instrument." Syl. Pt. 5, *Soliva v. Shand, Morahan & Co., Inc.,* 176 W. Va. 430, 345 S.E.2d 33 (1986), *overruled on other grounds by National Mutual Insurance Co. v. McMahon & Sons, Inc.,* 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Parsons v. Hallliburton Energy Services, Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2017). Petitioner had a duty to read the coverage reduction provision, as directed by State Auto. *See also American States Ins. Co. v. Surbaugh*, 231 W. Va. 288, 299, 745 S.E.2d 179, 190 (2013) ("Had Mr. Grimmett read the policy, as he was told to do in a letter and on the policy itself, he would have learned of the exclusions and could have contacted American States with any questions he had regarding said exclusions. In other words, American States fulfilled its obligation to bring the exclusion to the attention of Mr. Grimmett, but Mr. Grimmett failed to carry out his duty to read the policy."). Petitioner's claim that the 2009 notice was inadequate to advise him of the coverage reduction provision and amounts to a waiver of the application of the provision in this case is thus unavailing.

*McKinney* and *Kimball Ice* are further distinguishable because, in those cases, the insurers were aware that the properties were or would become vacant when the respective policies were written and invoked provisions that excluded coverage entirely based upon the vacant status. In the present case, State Auto became aware that the subject building was vacant in 2009. Petitioner, who was made aware of the vacancy provision at that time, continued to maintain reduced coverage on the building for covered losses (with the exception of the six enumerated causes of loss set forth in the State Auto policy). Such coverage clearly benefitted petitioner and, given the evidence below that petitioner had attempted to rent or sell the property during the period of vacancy, also served the practical purpose of allowing the building to move fluidly between "occupied" and "vacant" status without requiring petitioner to take affirmative steps to modify the terms of the policy accordingly. To the extent the circuit court observed that petitioner was "a sophisticated business man" who owned other investment properties and who recognized the benefits of maintaining

---

[4] As previously noted, the vacancy provision in petitioner's policy states that if the building is vacant, "[w]e will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss: (a) Vandalism; (b) Sprinkler leakage, unless you have protected the system against freezing; (c) Building glass breakage; (d) Water damage; (e) Theft; or (f) Attempted theft."

coverage on the vacant structure, such observation was but one factor that the court considered in determining that State Auto did not waive the application of the coverage reduction provision.

Based upon the foregoing, we find that the circuit court did not err in concluding that petitioner failed to present clear and convincing evidence that State Auto intentionally relinquished its right to invoke the vacancy provision that reduced coverage for petitioner's fire loss by fifteen percent. Accordingly, the court correctly determined that the doctrine of waiver did not apply in this case.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 20, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison